F. E. GARNER, *County Clerk of Rush County*, v. THE STATE
OF KANSAS, *ex rel. P. Moon.*

1. JUDGMENT, *Operative and Conclusive, Until When.* Where a court of
record has jurisdiction of the parties and the subject-matter, its judg-
ment is operative and conclusive until vacated or reversed, no matter if
rendered without proper proof, or it be otherwise erroneous.
2. JUDGMENT, *Erroneous—Not Void.* Where a court of record, having
jurisdiction, renders a judgment upon a petition filed before it against a
defendant upon default of answer, and the statute requires the court in
the particular proceeding to take evidence, and make special findings,
and the court fails to comply with the statutory requirements, the judg-
ment at most is erroneous, not void.

*Error from Rush District Court.*

THE following are the facts in this case, chronologically
stated: On the 12th day of February, 1878, there was an
election held in Rush county for the purpose of relocating
the county seat of that county; on the 14th day of that month,
the board of commissioners met and canvassed the vote, and
declared the result in favor of Walnut City. One Daniel
Hammond, feeling himself aggrieved at the result so declared,
in May, 1878, commenced a proceeding in mandamus under
the provisions of ch. 79, Laws of 1871, and the amendment
thereto of ch. 126, Laws of 1872, to contest such election, and
to compel F. E. Garner, as county clerk of Rush county, to
remove his office, books, papers and documents pertaining
thereto to the town of La Crosse, and there to keep the same.
The alternative writ in the case was made returnable on the
27th day of May, 1878, and personally served upon the de-
fendant. On the 31st day of May, 1878, at the regular May
Term of the district court of Rush county, the case was
called for hearing. Hammond appeared in person, as also
by his attorneys, and the defendant F. E. Garner was present
in person, as also by his attorneys. It then appearing to the
court that the defendant was in default and had wholly failed
to obey the alternative writ, and had not made any return
thereto, after hearing arguments of counsel on the part of

the relator and the defendant it adjudged that the town of La Crosse was the county seat of Rush county, and ordered the peremptory writ of mandamus to be allowed against the defendant, directing him to immediately remove all the books, papers, documents, effects and things belonging to the office of county clerk of Rush county to La Crosse, and there to keep his office as such county clerk. Upon the hearing of this case, no evidence was offered by either of the parties. In obedience to said peremptory writ, the defendant Garner went to La Crosse and removed to said town all books, documents and effects belonging to the office of county clerk, and kept his office at that town until the 10th day of June, 1878. On the 7th day of June, 1878, upon the relation of the county attorney of the county of Rush, an alternative writ of mandamus was granted by one of the associate justices of this court against the said F. E. Garner, defendant, commanding him, upon the receipt of the writ, to remove his office as county clerk of Rush county, and the books, papers and records thereof, to Walnut City, in said county, on or before the 2d day of July, 1878, and in case he did not do so, to show cause why he had not done as commanded. This writ was served on the 10th day of June, 1878, upon Garner, and thereupon he removed his office as county clerk of Rush county, together with the books, records, etc., belonging to the office, to the town of Walnut City, and made such return to the alternative writ of mandamus issued out of this court. On the 2d day of July, 1879, it was adjudged in that proceeding that the plaintiff have and recover judgment against the defendant Garner for his costs; and it was further considered and adjudged by the court "that the judgment entered should not conclude or be a bar to the action of any other person in any suit properly brought by such person concerning the subject-matter of dispute herein." After Garner, the defendant, had returned to Walnut City, he was reëlected as county clerk of Rush county, and continued to discharge the duties thereof at Walnut City. On November 27, 1879, P. Moon commenced his action as relator, to com-

pel by mandamus the defendant F. E. Garner to remove his office as county clerk of Rush county, together with the books, papers and records thereof, to the town of La Crosse, and to keep the same there as the county seat of that county.   The defendant filed his answer thereto, and upon the hearing a peremptory writ of mandamus was allowed against the defendant, the court holding that the judgment of May 31, 1878, was valid and binding; that it could not be attacked in a collateral proceeding; and that as the question of the county seat had once been litigated in an action against Garner as county clerk, it was not subject to relitigation by him.   Defendant, on the 21st day of March, 1881, filed a motion to vacate and set aside the peremptory writ of mandamus, and to grant a new trial therein.   This motion was overruled, and the defendant excepted, and brings the case here.

*Fierce & Cline*, for plaintiff in error.

*Ady & Brown*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The judgment of the trial court, which we are asked to review and reverse, is based upon the validity of a prior judgment, rendered May 31, 1878, in the action of The State of Kansas, on the relation of Daniel Hammond, against the plaintiff in error as county clerk of Rush county, allowing a peremptory writ of mandamus to issue against Garner as such county clerk, commanding him to remove immediately all the books, papers, documents, effects and things belonging to the office of county clerk of the county of Rush, to La Crosse, and thereafter to keep the office of county clerk at said town, and adjudging the town of La Crosse to be the county seat of Rush county.   In that action, Hammond, the relator, set forth in his alternative writ that he considered himself aggrieved at the result of the election held in Rush county on the 12th of February, 1878, for the purpose of relocating the county seat of Rush county; that there was malconduct and fraud on the part of the board of commissioners

in said county in its action in ordering the election, in this: that the county seat had been, by a vote of the electors of the county, relocated on the 27th day of February, 1877, at the town of La Crosse; that there was no petition having the legal number of petitioners presented to the board, or filed in the office of the county clerk of the county, at the time the order for the new election was made; that the legal number of electors in the county, as ascertained from the last assessment rolls preceding the filing of the pretended petition, asking for a relocation of the county seat, was three hundred and eighty-one; that the number of names on the pretended petition was two hundred and forty-two; that of the number appearing on the pretended petition, there were the names of forty-five persons who were not at the time of presenting the petition or signing the same, legal electors of the county, and there were also on the petition the names of five persons who did not sign the petition, or authorize anyone to sign their names for them. The petition contained the names of the alleged illegal petitioners, and also the names of the petitioners whose names were forged thereto. The petition further set forth that at the election, the town of Alexandria received one vote for the county seat; that the town of La Crosse received one hundred and twenty-seven votes, and the town of Walnut City received two hundred and thirty-four votes; that certain illegal votes were cast and counted for Walnut City, giving the names and. numbers thereof; that certain legal votes were offered in favor of La Crosse and refused, giving names of the parties offering to vote and the number thereof; that a majority of all the legal votes cast were in favor of La Crosse for the county seat; and that Walnut City was illegally declared the chosen county seat.

It is contended by counsel for plaintiff in error that as no evidence was introduced upon the trial of the cause had on May 31, 1878, and as the court failed to make any special findings of fact as prescribed by § 9, ch. 79, Laws of 1871, the judgment was and is utterly void. Counsel overlook the proposition that a judgment may be irregular or erroneous,

and not void. Conceding for the purpose of argument that the judgment was erroneous, it cannot be said to be void, as the court had jurisdiction of the parties and the subject-matter. Therefore the judgment is binding and conclusive until vacated or reversed, and we must hold it operative for all that that term implies. To illustrate: Section 290 of the code requires a court, upon the trial of questions of fact, on the request of either of the parties to the action, to state in writing the conclusions of fact found separately from the conclusions of law. Now if a district court having jurisdiction of the parties and subject-matter enters judgment in a case where questions of fact are involved, and a jury is waived by the parties, but fails to state conclusions of fact and of law in accordance with the request of one of the parties, the judgment rendered by it would be erroneous, but clearly not void. In such a case the right of a party to have the court make separate conclusions of fact and law is a substantial right, and a judgment will be reversed for a refusal to grant such a right. (*Briggs v. Eggan*, 17 Kas. 589.) But this is a very different thing from a void judgment. Likewise, the action of the court in allowing a peremptory mandamus upon the failure of the defendant, to answer the alternative writ without the introduction of evidence, at most was only error, but not a sufficient ground to declare the judgment a nullity. The court had jurisdiction, and whether all of its proceedings were strictly in accordance with the provisions of the act under which the action was prosecuted, and whether proper proof was introduced to sustain that judgment, we need not inquire. The defendant was present in person upon the rendition of the judgment, and also appeared by counsel. He then excepted to the judgment, and was allowed by the court fifty days in which to make a case to have the rulings and judgment of the district court reviewed. He neither took advantage of his exceptions, nor prosecuted any writ of error, and therefore he is not now in any condition to insist that the judgment can be treated as a nullity by him. We think, moreover, that this judgment is continuing as against the

plaintiff in error as long as he continues in office as county clerk of Rush county, whether it be under his first election, or a subsequent reëlection. It is moreover contended that plaintiff in error satisfied the judgment of the 31st of May, 1878, by removing and keeping his office at La Crosse for a time. The original action of mandamus is likened by counsel to one of forcible entry and detainer, where A gets a judgment against B, and upon a writ of restitution B is ousted from the premises, and after his eviction reënters and assumes possession. Not so. The judgment of the 31st of May, 1878, was a continuing one, not merely for the plaintiff in error to remove to La Crosse with his office, but to keep it there. A temporary removal to La Crosse, followed soon after by a change to Walnut City, was not substantial compliance with the terms of the judgment. We suppose, upon proper application having been made by the relator in the first action, that the plaintiff in error might have been punished after his return to Walnut City for his refusal and neglect to perform the duty enjoined by the peremptory writ of mandamus. It is said, however, that the plaintiff is excused from a further compliance to the writ of mandamus of May 31, 1878, because on the 7th of June, 1878, one of the justices of this court issued an alternative writ commanding him as county clerk of Rush county to go to Walnut City with his books, papers and records, and to keep his office there or to show cause for not so doing. That proceeding does not figure in this controversy, because upon the final judgment entered in that case, it was expressly provided that the judgment rendered "was not to conclude or be a bar to the action of any other person, in any suit properly brought by such person concerning the subject-matter of the dispute." This judgment, therefore, in no way affected the rights of the relator in the first action, or the rights of any other person. To the alternative writ issued by this court, the plaintiff in error did not set up the judgment of the district court, nor any matter affecting the proceeding in which that judgment

was rendered, and this court simply adjudged the costs against him, without affecting thereby the rights of any other action or party.   It is suggested that if the judgment of May 31, 1878, is valid and still in force, that the subsequent proceedings upon the relation of P. Moon are wholly supererogatory, and therefore improper.   It is certainly true that the relator in this case either had the right to the benefit of the judgment of May 31, 1878, or that he had the right to commence an original action under ch. 79, Laws of 1871, and the amendment thereto, (Laws of 1872,) for the purpose of compelling the defendant below, as county clerk, to remove his office, and the books, papers and records thereof, to La Crosse, which the relator claims to be the county seat of Rush county. For the purposes of this case, the action commenced by the relator may be deemed and considered an original action. The defendant below (plaintiff in error) did not attack the alternative writ by demurrer, motion or otherwise, and based his defense in his answer upon a general denial, and the removal of his office from La Crosse on the 10th of June, 1878, to comply with the terms of an alternative writ of mandamus awarded by one of the justices of this court.   In the agreed statement of facts, the judgment of May 31, 1878, is recited, and as this judgment was subsequent to the election of the 12th of February, 1878, and the canvass and declaration of the result thereof, and as such judgment was not wholly void, the same was properly considered by the trial court, and of itself was *prima facie* evidence,, (even if not conclusive,) until overthrown by competent evidence that La Crosse was the legal county seat.

It is finally asserted that at the time of the rendition of the judgment, plaintiff in error was out of office; therefore that the judgment cannot affect him.   Again, that the judgment was rendered in vacation, and therefore utterly void. There is not anything in the answer of plaintiff in error or in the record that shows that plaintiff had vacated or left the office of county clerk; nor does it appear from the record

that the judgment was rendered in vacation. The journal entry of the judgment purports that the court at its rendition was actually in session. Even if the judgment was rendered on the 21st day of March, 1881, which is not clearly apparent from the record, it is by no means conclusive that it was rendered when there was no court in session in Rush county. It is true, that the times fixed by law for holding court in that county are the fourth Tuesday in May and the fourth Tuesday in November each year, but the court has authority to hold adjourned terms from time to time, and unless there is something in the record tending to show that the judgment was rendered in vacation, we are not to assume such to be the fact. In the first place, judges and other officers are supposed to perform their duties in accordance with the provisions of law; and in the second place, error must affirmatively appear in the record before we can interfere. We are not to presume error, or that a judgment is wholly void.

Counsel very forcibly suggest that if several different actions were commenced, and that each relator set up a different statement of facts, one establishing that the county seat was at Alexandria, another at Brookdale, another at Hampton, another at Pioneer, another at La Crosse, another at Walnut City, and so on, that the result above declared would cause great confusion, and instead of one county seat, several different county seats might be located in the county by judgments of the district court. To this we reply, that while the statute permits any elector who considers himself aggrieved by the result of any election held for removing, locating, establishing, or relocating the county seat of a county, to contest by an action in the district court such election, yet if different actions are brought, and different judgments are rendered, it is possible that the attorney general or county attorney in the interest of the public might, in a proper action instituted for that purpose, have all of these different judgments reviewed and superseded by a general adjudicating as to which town, city or place was the legal county seat of the county, and thus bring together all of the county offi-

cers, with their books, papers and records, to such town, city, or place, as the county seat.

The judgment of the district court will be affirmed.

All the Justices concurring.