U. C. Guss, J. W. McNeal, W. H. Gray and Frank H. Greer v. J. T. Nelson.

(Filed September 2, 1904.)

1. OPTIONAL CONTRACT—Rescission—Notice Under—Duty to Return Property. Where a contract is entered into at Guthrie, Oklahoma, for the purchase of certain shares of stock of various mining companies with offices and place of business at Fort Scott, Kansas, the contract providing that it includes the delivery of the seals and all other records belonging to each of the companies, and a payment of $500.00 is made on the purchase price, which payment is to be considered as an option on all of said property until the fourth day of March, 1901, at which date the parties are to pay the vendor an additional sum of $4500.00, or in lieu thereof turn back to the vendor all the property delivered by him, Held, That in case the purchasers elect to rescind and turn back to the vendor the property purchased, under the option given them, in order to entitle them to the benefit of such option, they must notify the vendor within the time given of their election, and must return or offer to return all the property, certificates of stock and records which were received by them.

2. **RETURN OF PROPERTY NOT SUFFICIENT, WHEN.** Where such contract is entered into, and the purchasers, on the day prior to the expiration of their option, at a meeting held in Guthrie, decided among themselves to rescind, and although they knew the address of the vendor, because of the vendor not being a resident of the Territory of Oklahoma or having a place of business in the city of Guthrie, placed the certificates of stock in the Guthrie National Bank subject to the order of the vendor, and thereafter placed to his credit in such bank all the income received from the royalties of the property, **Held,** Not to be a compliance with the terms of the contract of rescission and return of property, which contract provided that in case the purchasers should elect to recind they should "turn back to the vendor all the property delivered by him."

3. **ORAL OPINION NO PART OF RECORD.** Where at the conclusion of a trial had before the court without a jury, the court orally reviews the evidence and expresses its opinions upon the law and the facts involved in the case, and where there are no special findings of fact and conclusions of law asked for, and where the findings and judgment of the court are embodied in a journal entry, the oral opinion expressed by the court performs no office in a case made, and cannot be considered by this court on appeal from a judgment of the trial court.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford. Trial Judge*

*John D. DeBois* and *Cotteral & Hornor,* for plaintiffs in error.

*W. R. Biddle, George S. Green* and *Selwyn Douglas,* for defendant in error.

Opinion of the court by

PANCOAST, J.: Action commenced in the district court of Logan county by the defendant in error against the plaintiffs in error to recover the sum of $4,500.00 upon the following contract:

"Memorandum of agreement made and entered into this 28th day of May, 1900, to wit, as follows: J. T. Nelson

agrees on his part to turn over 25 per cent of the capital stock of the following coal companies located in the Creek Nation, to wit: Sapulpa, Choctaw, Catoosa, Wewoka, Red Fork, Neyaka, Concharty, Tulsa, Car Creek and Broken Arrow Mining Companies, to the following persons: U. C. Guss, W. H. Gray, F. H. Greer and J. W. McNeal.

"The consideration of the delivery under which the above listed stock and other stock as hereinafter described is as follows: This also includes the delivery of the records belonging to each of said above named companies, the seals and all other records that in any way belong to any of said companies. A payment of $500 is to be made in cash upon delivery of the above named property and additional property in the way of stock hereinafter listed. The $500 is to be considered an option on all said property until the 4th day of March, 1901. At that date the above named parties are to pay to Nelson an additional sum of $4,500.00 (four thousand five hundred dollars) or in lieu thereof to turn back to said Nelson all the property delivered by him. In addition to the above mentioned 25 per cent of capital stock aforesaid, which the said J. T. Nelson represents he owns in his own right, he agrees to turn over and deliver enough more stock to make the aggregate sum of stock delivered under this contract as follows:

| | |
|---|---|
| Sapulpa | 1210 shares |
| Choctaw | 369 shares |
| Catoosa | 369 shares |
| Wewoka | 369 shares |
| Red Fork | 369 shares |
| Neyaka | 358 shares |
| Concharty | 369 shares |
| Tulsa | 319 shares |
| Car Creek | 368 shares |
| Broken Arrow | 369 shares |

"The $500.00 above mentioned is to be earnest money

to be forfeited in case the balance of payment is not paid. Nelson also agrees to give U. C. Guss his proxy as director in each of the above named companies until such time as it may be convenient for him to resign, and Guss or some one else elected to fill the vacancy.

"U. C. GUSS,
"W. H. GRAY,
"J. W. McNEAL,
"F. H. GREER.
"J. T. NELSON."

The record shows that under this contract Nelson shipped the property described in the contract by express from Ft. Scott, Kansas, where the headquarters of the company were, to Guthrie, all the parties being at Guthrie at the time the contract was signed, the residence of Nelson, however, being at either Fort Smith, Arkansas, or Fort Scott, Kansas, the right of the plaintiff below to recover being based upon the theory that the defendants below had failed to turn back to Nelson the property delivered to them, and therefore, under the contract, were bound to pay the remainder of the contract price of $4,500.

The defendants' answer to the petition was, first, a general denial; second, that the defendants had elected to turn the property back to the plaintiff prior to the date of the expiration of the option March 4, 1901, and had tendered the same back to the plaintiff; third, that the plaintiff had induced the defendants to enter into the contract through fraudulent misrepresentations; and fourth, that there was no consideration for the contract. The trial was to the court without a jury. The findings of fact were general, and were in favor of the plaintiff below. The findings

contained in the journal entry of judgments are in the following language:

"And the court, after hearing all of the evidence and arguments of counsel and being fully advised in the premises, finds for the plaintiff on all of the issues in this action and finds that the defendants and each of them are indebted to said plaintiff upon the contract sued upon and set out in this petition in the sum of four thousand five hundred dollars, with interest thereon at the rate of seven per cent per annum from the fourth day of March, A. D., 1901, and that the plaintiff is entitled to judgment against the said defendants therefor."

Under this finding, every question of fact necessary to be found and upon which the judgment is based is in favor of the plaintiff in the action; and, following the rule so frequently laid down and universally adhered to by this court that where there is evidence upon which a finding of fact may be based, this court will not disturb the finding unless it is manifestly wrong, we might very properly affirm this case without further discussion.

However, some of the legal questions arising in the trial of the case below, and discussed in the briefs in this case are so interesting, together with the fact that a considerable amount is involved, that we think it may be well to notice some of the propositions contended for more in detail.

First, we think it proper to call attention to a question of practice that seems to be growing among certain members of the profession in the Territory of inserting into a case made matters of no importance, and which cannot be considered by this court. This practice serves only to make records more voluminous than they should be, and to add to this court's labor. The record in this case is not a large

one, but it contains the oral decision of the court below when rendering its decision at the trial. This court, as well as the supreme court of Kansas from which we take our civil procedure act, has repeatedly held that the oral decisions of the trial court have no office in a case made, should not be included, and cannot be considered by the appellate court, when the finding and judgment of the court below are properly formulated into a record or written order.

In this case, the findings of fact and conclusions of law of the court below are contained in the journal entry. The oral decision of the judge at the conclusion of the trial cannot be considered by this court in any way.

Notwithstanding this, the argument of counsel for plaintiffs in error is based almost entirely upon the oral statements of the trial court and it is insisted that the court made no findings upon certain propositions, and that therefore this court is not obliged to reverse the trial court's findings in order to arrive at a conclusion as to certain of the facts contended for. These contentions of the plaintiffs in error could not possibly avail anything, because this court is bound to look to the findings of fact as contained in the journal entry. A case made should properly contain nothing but that which is necessary to enable the appellate court to pass upon the questions involved on appeal.

Every question of fact under the general finding in this case is against the plaintiffs in error. Had they desired, special findings might have been made, and in such event, the questions contended for and discussed in the briefs might have been properly presented to this court, if the special findings so warranted.

The uncontradicted evidence shows that this contract was for the purchase of certain mining stocks of coal companies operating or to be operated in the Indian Territory. At the time of the contract, the plaintiffs in error or some of them, owned certain interests in these companies or some of them, and desired to obtain a controlling interest, and in order to do so, contracted to purchase a certain amount of the stock from the defendant in error which would give them control of the property and of the company. Included in the contract for the purchase of stock was a provision for the resignation of the defendant in error as director, the transfer of the books, papers, records and seals of the companies, and the election of new directors. Some of the plaintiffs in error at the time of the contract were holding positions as officers of the company, and were familiar with the place where the business of the company was transacted, and where the records were kept.

Now, to take up the first issue raised by the answer, "That the defendants had elected to turn said property back to the plaintiff prior to the 4th day of March, 1901, and had tendered the same back to the plaintiff," all questions of fact involved in this issue were decided by the court below in favor of the defendant in error, and there being evidence sufficient upon which to base such a finding, this court, under the rule hereinbefore mentioned, will not disturb the same. We will, however, again refer to this issue later on.

The second issue raised by the answer, that plaintiff had induced the defendants to enter into said contract by fraudulent representations, and the third, that there was no consideration for the contract, were also issues found against

the plaintiffs in error by the trial court, and we think very properly so.

A right to repudiate a contract on the ground of fraud is not a right arising out of the terms of the contract itself, but is one accruing to the parties under the law, separate and apart from any conditon named in the contract. In order that the plaintiffs in error might have availed themselves of this legal right, they should have, within a reasonable time after the discovery of the fraud, given to Nelson notice of the disaffirmance or rescission of the contract; that is, in some way have communicated to Nelson their election to rescind, and they should also have restored or offered to restore everything of value that they had received under the contract. They could not rescind in part. The rescission must have been of the entire contract. They could not be allowed to rescind the contract and to retain any of the benefits derived therefrom. Nelson should have been put in *statu quo*. American & English Enc. of Law, 2nd ed; vol. 24, p. 645, and cases there cited.

There is no pretence that they had performed any of the requirements of the law in this regard. In the first place, the court's findings of fact are against this proposition; that is, that there was no fraud or fraudulent statements or misrepresentations on the part of Nelson. The record does not disclose that any claim of fraud was made until the filing of the answer. No notice is shown to have been given that they had rescinded the contract upon this ground. No effort or attempt was made to return the property or any part of it on this theory; but on the contrary, even up to the trial and during the trial, the benefits accruing

to the plaintiffs in error, they claimed the right to retain. As stated before, the rights of the parties arising under this head are separate and apart from anything contained in the contract itself, and if under the terms of the contract, the plaintiffs in error would be entitled to retain the benefits arising under the contract, that is, the income from the royalties, they would not be entitled to retain such benefits if they rescinded the contract upon the ground of fraud. In such case, they would be required to return everything received, including the royalties, and would be entitled to recover the $500.00 earnest money originally paid, together with proper damages, if any had accrued.

Upon the proposition that there was no consideration for the contract, little need be said. In order to entitle one to defend against a contract on the ground of a failure of consideration, the evidence must show something more than inadequacy of consideration. When, as in this case, the evidence shows that the parties seeking to rescind have enjoyed an income from the property, they are not entitled to rescind. The evidence in this case entirely fails to show a failure of consideration. There is no statement of any witness who testified that the property was entirely without value, while on the other hand, the evidence shows that during the nine months covering the period of the option of plaintiffs in error, they had received as their share an income from the property in the sum of about $500.00, and in addition thereto, prior to the trial, a further sum of over $300.00. How can it be said that a property producing an income of over $800.00 in a year was wholly without value? This would be about sixteen per cent on the investment; an

amount that ordinarily would be considered a sufficient income on an investment, by the average financier.

Returning to the first defense, (that the plaintiffs in error had elected to return the property prior to the fourth day of March, 1901, and had tendered the same back,) notwithstanding the allegations of the answer that they had tendered the property to the defendant in error, and notwithstanding the finding of the court against them on the question of fact involved in this contention, the plaintiffs in error contend that under the law they were not required to return the property, or even to give notice of the fact that they had elected to avail themselves of their option and rescind the contract. This really is the most interesting proposition contended for by plaintiffs in error. The evidence on the part of the plaintiffs in error shows that on the third day of March, 1901, the day before their right to rescind expired, they held a meeting among themselves and elected to rescind; that they instructed Mr. DeBois, their attorney, to notify the defendant in error of their election. A very few days prior to this they had received a letter from the defendant in error, in which he stated that he would hold them to a strict compliance with the contract; that if they did rescind within the time provided in the contract, they should return him the property, and directed that they return it to Fort Smith, Arkansas.

It is contended that inasmuch as the defendant in error, Nelson, did not reside or have a place of business in Oklahoma, but did reside beyond the limits of the Territory, that all they had to do in order to fulfill the requirements of the law under the contract which designated that they

should return the property to Nelson, was that they should simply elect to rescind, and that they were under no obligations either to return the property, or even to notify Nelson of the fact of their election; but if they are mistaken in that position, that they did in fact notify Nelson of their election, and that the property was at the bank in Guthrie, and that if they were required to do anything, that this was a sufficient compliance with that provision of the contract which required them to return the property.

As stated before, the court found against the plaintiffs in error upon the questions of fact involved in this contention; that is to say, the court found as a matter of fact that DeBois did not write the letter or send the telegram, and that Nelson did not receive the letter or the telegram that DeBois claimed to have sent. The evidence upon this proposition being conflicting, this court will not disturb the finding.

This leaves the proposition resting upon the contention of plaintiffs in error that under the law they were not obliged to return the property or give notice of the election to rescind, and this because of the fact that the defendant in error did not reside within the Territory, and had no place of business therein. Is this contention well taken, and do the authorities cited by plaintiffs in error sustain it? We think not. Each and every authority cited by the plaintiffs in error is based upon a rule of law that has no application to this case whatever. The cases cited by counsel are these: That where A is indebted to B upon a contract for the payment of money, made at a certain designated place, and no place of payment is mentioned in the contract, that it

is payable where made, and when B resides beyond the limits of the realm, or in other words, in this case, beyond the limits of the Territory, that A is not obliged to hunt B up in order to pay him, but that if he is ready, willing and able to pay at the maturity of the contract, that is sufficient.

We find no fault with the law laid down by the several courts cited by plaintiffs in error, but it is not applicable here. The propositions decided in those cases are not the propositions arising here. Those cases pertain only to questions of payment of simple contracts. They do not involve questions arising under the rights of rescission of contracts, or rights arising on optional contracts, or questions arising under the provisions of contracts to return property.

In this case, the contract was for a sale of the mining stock mentioned and described therein. The delivery of the property together with the payment of $500.00 completed the contract, and transferred the title to the plaintiffs in error, subject, however, to the right of plaintiffs in error to exercise their option either of paying the remainder of the purchase price, or of rescinding the contract and returning the property. The right to return the property was a condition of the sale. It was a condition subsequent, the performance of which would have rescinded the obligation of plaintiffs in error to pay the purchase price. The performance of the option to return was subject alone to their election. The plaintiff below had no power whatever to prevent or effectuate it. It could only be performed by the voluntary act of the plaintiffs in error. If they failed to perform it, the conditions were discharged, and the promise to pay became absolute. Some affirmative act was necessary on their

part in order to complete the rescission. That is to say, the contract required them to return the property. The word "return" is very readily understood, and the plaintiffs in error could only be relieved from the obligation to return the property either by some act of the defendant in error, or by some condition making it impossible to comply with the terms of the agreement. (*Stevens v. Hertzler,* [Ala.] 19 So. 838.)

The mere fact that the defendant in error did not reside nor have a place of business within the Territory was not in itself sufficient to relieve the plaintiffs in error from the obligation to return. The rule of law governing and defining the duties of a party in returning property under an express provision in a contract to return, in optional contracts of this character, is much the same as in cases of rescission of contracts where there is a breach of warranty.

In the contract in this case, there is an express provision giving the plaintiffs in error the right to rescind, and that right is at the mere option of the parties. In case of a breach of warranty there is an implied right to rescind which is not optional with the parties, but is conditioned upon the breach of the warranty. The duty of a party to give notice of disaffirmance of a contract, and to return or offer to return the property, is the same in both instances, except that in cases arising under an implied right to rescind, the notice and offer to return must be within a reasonable time, while in this case, the time limiting the right to disaffirm, and within which the property was to be returned, is fixed by the contract itself. (A. & E. Enc. of Law, vol. 24, p. 645,

and cases there cited: *Carney v. Newberry,* 24 Ill. 203; *Neal v. Reynolds,* 38 Kans. 785; *Jeffers v. Forbes,* 28 Kans. 174.)

The duty to return or offer to return the property, and the duty to give notice of the disaffirmance of the contract, is not controlled or obviated by reason of the party to whom the notice is due not residing within the limits of the state or territory. Where there is no express provision in the ·contract providing otherwise, the general rule is that the property shall be returned to the place where it was received when delivered under the contract. There may be some exceptions to this rule, but this case does not fall within the exception. The notice of disaffirmance must be given in both instances, and as the parties were in communication with each other, and the plaintiffs in error had knowledge of the address of the defendant in error, of course the notice should have been addressed to such place, and the defendant in error having notified the plaintiffs in error of the point to which he desired them to return the property, a return to such place on or before March 4, 1901, would have been a sufficient compliance with the contract.

It is not necessary to determine, and we do not determine as to whether or not it was the duty of the plaintiffs in error to return the income from the royalties, under the provisions of the option; but it was their duty in case they elected to rescind, to notify the defendant of such election, and to return· or offer to return to the place from which they received it, all of the certificates of stock, books, contracts, seals and other paraphernalia pertaining to the property and the business. This they failed to do, and failing

in that regard, they became liable for the remainder of the purchase price.

Having carefully examined the entire record in this case, discovering no error therein, and believing that a correct judgment was entered, the judgment of the court below is affirmed.

Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.