## SEWALL v. McGOVERN, ET AL.
(No. 1037; Decided Nov. 24, 1922; 211 Pac. 96)

WILLS—PROBATE PROCEDURE— PRIMA FACIE PROOF OF WILL—CONTEST PROCEDURE—PARTIES—SPECIAL FINDINGS IN WILL CONTEST—UNDUE INFLUENCE—BURDEN OF PROOF—TESTAMENTARY CAPACITY.

1. Ordinarily a *prima facie* case in support of the probate of a will is made out by the testimony of the subscribing witnesses, and the production of the will, and in such case it would be error to refuse probate because further evidence is not produced.

2. In proceedings for the probate of a will, it having been shown by testimony of subscribing witnesses that the name of the testatrix had been signed to the will by proponent who had also offered himself as a witness for the purpose of proving the death of the testatrix, and the value of her estate, a ruling by the trial court that proponent should relate what occurred on the execution of the will and the circumstance with reference to his signing the name of testatrix thereto, was not erroneous, and no substantial right of proponent was violated by permitting counsel for contestants to cross-examine him with respect thereto.

3. At the conclusion of formal proofs offered by proponent at the proceeding for the probate of a will, the trial court, without ruling upon the sufficiency thereof to constitute a *prima facie* case, required contestants to proceed with their case in opposition to the will, thus indicating that a *prima facie* case had been made by proponent, but that decision thereon should be reserved until the contest could be heard.

4. Upon a trial of questions of fact by the court, special findings are not required unless requested by one of the parties.

5 To be available as a ground for reversal, claimed imperfections in findings should be called to the attention of the trial court in order that it may have an opportunity to make necessary corrections.

6. Where all of the evidence submitted in a will contest is presented by a bill of exceptions for review upon an assignment that the judgment is not sustained by sufficient evidence and is contrary to law, the review must be upon the whole record and takes the place of the more particular findings, which appellant claims should have been made by the trial court.

7. Upon an assignment of insufficiency of evidence to sustain the judgment in a will contest upon an issue of undue influence, where it was shown by his own testimony that proponent was sole beneficiary under the will in controversy, active in its execution, and that decedent was unable to write or to read handwriting, that she had handed him a written memorandum which she asked him to copy but which was almost illegible, (the writer thereof not being disclosed), that decedent gave him directions as to the disposition of her property, which he incorporated into a draft and which he had typewritten by a fellow employee, and which he thereafter returned to decedent, who executed it and at once delivered it to proponent who kept it until after her death, *held* that the circumstances did not tend to show that decedent had the benefit of disinterested advice but justified an opposite conclusion. And where the testimony of other witnesses, including the family physician of decedent, showed that decedent was a woman of advanced age, suffering from progressive senility and possessed of many delusions and hallucinations, *held* that these and other circumstances shown in the case were strong evidences of testamentary incapacity.

8. Undue influence in the execution of a last will and testament, being seldom susceptible of direct proof, may be established by proof of facts from which it may be fairly and reasonably inferred.

9. If a party writes or prepares a will under which he takes a benefit, that is a circumstance which ought generally to excite the suspicion of the court, and call upon it to be vigilant and jealous in examining the evidence in sup-

port of the instrument, in favor of which it ought not to pronounce unless the suspicion is removed, and it is judicially satisfied that the paper propounded does express the true will of the deceased, where questioned in the trial of an issue of undue influence.

10. Upon the trial of an issue of undue influence in a will contest a showing that the will was prepared by a beneficiary is a suspicious circumstance only, and insufficient in itself to render the will invalid, but where strengthened by evidence that proponent is a stranger to the blood of testatrix; that by the will he takes a large or unreasonable proportion of the estate; that he was the trusted or confidential agent or advisor of the deceased; that he was present and active at the execution of the will and took the instrument into his possession; that the testatrix was of advanced age, impaired faculties and feeble of mind and body; that she was illiterate and forced to sign by mark; that she had no competent or disinterested advice with reference to making a will; that only a short time intervened between the signing of the will and death; constitutes a strong *prima facie* case in opposition to the will.

11. In the trial of a will contest upon issues of undue influence, lack of testamentary capacity and fraud, it is for the trial judge as trier of the facts to decide as to the credibility of witnesses, and even though testimony is not contradicted by other witnesses he is not bound to believe it.

12. An oral discussion of the evidence by the trial judge, even though reduced to writing, has no proper place in a bill of exceptions even for the limited purpose of showing a misconception of the evidence by the trial court, and will be disregarded by the appellate court in considering whether the judgment is supported by sufficient evidence, the appellate court looking only to the evidence in the record.

*William B. Ross* and *Avery Haggard,* for plaintiff in error.

The court erred in requiring proponent to produce his own testimony as to all of the circumstances surrounding the execution of the will and of his relations with the testatrix, and in permitting contestants to cross-examine him as to these matters. The testimony of attesting witnesses established *prima facie* case. Under our statute (6712-6716 C.

S.) the issues of testamentary capacity, freedom from fraud and undue influence, and execution and attestation of the will are to be raised by petition of contestants and answer of proponent, and tried as thus joined. The California decisions govern. (Estate of Latour, 140 Calif. 414, 73 Pac. 1070, 74 Pac. 441, cited with approval in Wood v. Wood, 25 Wyo. 26.) It was held in that case that the burden of proof is on contestants as to all issues mentioned in the statute. An allegation as to non-execution of the will is a negative allegation and does not change the rule, since such an allegation is a part of contestants' cause of action. The fact that a contest was pending which would bring out all of the evidence on both sides, placing the burden of proof on contestants, the court should have been satisfied with even a less strong *prima facie* case than where there was no contest. The evidence offered by proponent and which stands unimpeached, established due and formal execution of the will by testatrix who was of sound mind. This is all the statute requires. The weight of authority is to the same effect. (40 Cyc. 1284; Chandler v. Fisher, 290 Ill. 440, 125 N. W. 324; Lorean v. Lorean (Mo.) 208 S. W. 241; Wood v. Wood, 25 Wyo. 26.) The burden of proof rested upon contestants, (Wood v. Wood, supra.) The judgment is not sustained by sufficient evidence. The oral conclusions stated by the trial court at the close of testimony and arguments which is included in the Bill of Exceptions shows a clear misconception of the evidence and further shows that the findings of the trial court were based upon an assumed statement of facts, unsupported by any evidence. The testimony of proponent as to circumstances attending the preparation and execution of the will stands uncontradicted. Proponent lived in a house adjoining the home of testatrix; the testimony of subscribing witnesses was to the effect that they called at proponent's house on other business and were called in by testatrix to subscribe their names as witnesses to the will. The evidence showed testatrix to be in normal health. The distribution of her property was not unnatural in view of the circumstances, she was without relatives, ex-

cept a niece from whom she had become estranged. A large
number of witnesses called by contestants showed much bit-
terness of feeling against proponent growing out of other
matters. The evidence as to lack of testamentary capacity
was insufficient,—at most, it merely established eccentrici-
ties and peculiar notions, and feelings entertained by testa-
trix toward various people at different times, all of which
was offset by the testimony of several witnesses to the effect
that testatrix was exceedingly rational in all matters per-
taining to her property and business affairs. (40 Cyc. 1011-
13.) The judgment should be reversed.

*William E. Mullen* and *Roderick N. Matson,* for defend-
ants in error.

No objection was made by proponent to the cross-ex-
amination of the subscribing witnesses to the will. Pro-
ponent offered himself as a witness, presumably to prove
the fact of death and value of decedent's estate. Objec-
tion is made to the cross-examination of proponent by coun-
sel for contestants. It had been shown by testimony of
the subscribing witnesses that proponent was present and
had attached the signature or signed the name of testatrix
to the will. The trial court required proponent to give
as a part of his *prima facie* case, further testimony as to
the circumstances attending the execution of the will. It
devolves upon a court to require the propounder to prove
a will even in the absence of a contest. (40 Cyc. 1272). As
the testimony of proponent on this point had been complet-
ed, including his cross-examination by contestants' coun-
sel, the court called upon contestants to present evidence in
support of their contest, all of which was done, followed by
evidence offered by proponent and rebuttal by contestants.
Upon submission of the case and agreement of parties, the
court allowed all of the evidence of proponent to be con-
sidered as part of his defense. The case of Estate of Latour,
cited by plaintiff in error, holds that the preliminary proof
offered in support of the admission of the will must be satis-

factory to the court.  The Wood case is hardly in point for the reason that the preliminary proofs offered in support of the admission of the will in that case were regular and free from circumstance indicating fraud, undue influence or lack of testamentary capacity.

It devolved upon proponent to produce additional evidence to prove the will, if called for by the court.  (Kirby v. Sellards, 28 L. R. A. (N. S.) 270.)  For example, in a case where proponent prepared the will and was active in its execution, thus creating a suspicion of fraud, he must give only the clearest evidence of fact as to the real desire and will of the testator.  (Trumble v. Gibbons, 22 N. J. L. 117, 51 Am. Dec. 253; Purdy v. Hall, 134 Ill. 298, 25 N. E. 645.) Where testator was feeble in mind and one of the legatees gave instructions to and paid fees of the draftsman.  (Howell v. Taylor, 50 N. J. Eq. 426, 26 Atl. 566.)  Where testatrix was of advanced age, impaired faculties, feeble in mind and body, unable to write and signed by a mark and there being a short duration of time between making the will and the death of testatrix.  (In Re: Elster, 39 Misc. 63, 78 N. Y. S. 871; Kelly v. Sette, 68 Tex. 16, 2 S. W. 870; Cuthbertson's Appeal, 97 Pa. 167.)  Proof required to repel the suspicions arising under the foregoing circumstances must be clear and satisfactory (Lyons v. Campbell, 88 Ala. 862.)  The findings and judgment of the trial court are supported by evidence. The circumstances attending the preparation and execution of the alleged will appear much stronger against its validity than any of the facts set forth in the cases above cited.  In fact, the story told by proponent sounded so improbable and his testimony so inconsistent that it is doubtful whether any court would sustain the will even in the absence of a contest.  The instrument, itself, shows different colored inks used in subscribing the names of the witnesses from that used by proponent in subscribing the name of the testatrix, and the entire transaction shows unmistakable evidence of fraud.  It is shown that the testatrix was of advanced age, feeble in mind and body, and, in fact, in a dying condition on the date on which the will was alleged to have been ex

ecuted by her. The trial court after listening to all of the evidence and observing the demeanor of the witnesses, passed upon the credibility of the witnesses and the weight of their testimony, and thus arrived at a conclusion. It seems unnecessary to refer to the numerous decisions of this court that it will not disturb judgments rendered upon conflicting evidence, nor at all, unless there be no evidence to sustain the judgment. The recent ruling on this point being that in the case of Bissenger & Co. v. Weiss (Wyo.) 195 Pac. 527. Plaintiff in error procured a stenographic report of the oral discussion of the evidence by the trial court at the close of the case and caused it to be incorporated in the Bill of Exceptions, and attempted to predicate an argument upon it treating it as a part of the record. We contend that it is not a part of the record, should not be considered as findings made in the case, and has no bearing on the merits of this controversy one way or another, nor can the remarks of the trial court be considered in any respect for purposes of review. (School District v. Western Tube Co., 13 Wyo. 32; Hahn v. Citizens State Bank, 25 Wyo. 481; Gramm v. Fisher, 3 Wyo. 595.) The judgment should be sustained.

*Avery Haggard* and *Ross & Ellery,* in reply.

The trial court made no special findings; it was the duty of the trial court to make special findings whether requested to do so or not. (6713 C. S.) Failure to make special findings in a will contest leaves the trial court in a position similar to that resulting from the failure to make special findings when so requested in other civil cases. (5784 C. S.) Findings of the court upon the facts have the same effect as the verdict of a jury. (Rhodes v. U. S. National Bank, 66 Fed. 512). A statute requiring special findings is mandatory and a judgment not based upon such findings is, at least, voidable, if not void. (Carpenter v. Yeadon Borough, 57 Atl. 837; McHale v. Wellman, 46 S. W. 448; Speegle v. Leese, 51 Calif. 415; Davison v. Keller, 152 N. W. 106; Thomas v. Issenhuth, 100 N. W. 436; Hawkinson v. Patway, 126 N. W. 683; Leach v. Church, 10 Ohio State, 149; School

District v. Western Tube Co., 13 Wyo. 304; Hamil v. Talbott, 72 Mo. App. 22.) The trial court, in fact, failed to make any special findings. If there was a lack of testamentary capacity for execution of the will by testatrix at all, there would, of course, be no undue influence practiced. The conclusion of the trial court is lacking in specific statement. The findings should be, at least, as specific as the pleading (Farmer v. St. Croix Power Co., 93 N. W. 830). A conclusion of law does not take the place of a finding of fact (Zachariaw v. Swanson, 77 S. W. 627; In Re Daley's Estate, 135 Pac. 953). The findings fail to cover all of the material issues in the case. The statute requires the trial court in a contest of this character to make special findings upon all of the issues in the case, which was not done. (Ditterle v. Bekin, 77 Pac. 664; Thomas v. Clayton Piano Co., 151 Pac. 543.) The judgment not being predicated upon special findings as required by statute, should be reversed.

Kimball, Justice.

The plaintiff in error filed for probate an instrument dated December 23, 1919, purporting to be the last will of Ellen Conroy, deceased, whose estate is probably of the value of $8000.00. Defendants in error, who claimed under a former will, filed written grounds of opposition, alleging (1) that the later will was not executed and attested as required by law; (2) that Ellen Conroy, at the date thereof, was not of sound mind, and (3) that the will, if made, was the result of the fraud and undue influence of proponent.

The petition for probate and the contest proceedings came on for hearing at the same time. The judgment denied probate of the will, and proponent brings the case here by proceeding in error.

Following the method of procedure explained in the case of In Re Latour's Estate, 140 Calif. 414, 73 Pac. 1070, 74 Pac. 441, cited with approval in Wood v. Wood, 25 Wyo. 26, 164 Pac. 844, the proponent first offered his formal proof in support of his petition for probate. The two sub-

scribing witnesses, in relating the facts attending the execution and attestation of the will, testified that the proponent himself was present at that time, and not only signed to the will the name of the testatrix, who was unable to write, but also assisted her in making her mark thereto. These witnesses were cross-examined without objection. The proponent then became a witness and was examined for the purpose of proving formal and undisputed facts, such as the death of the testatrix and the value of her estate. His direct examination was confined to these matters, and cross-examination was conducted without objection until a question was asked seemingly for the purpose of inquiring into the relations between the witness and Ellen Conroy in her lifetime. The argument of an objection to this question led to a consideration of the propriety of requiring the proponent then to give in evidence his own version of what happened at the time of the execution of the will. The court ruled that this testimony should be given, and announced that the proponent should be examined by his own counsel with reference to the things that occurred at that time, after which counsel for contestants would be permitted to cross-examine. Thereupon the desired testimony was elicited from proponent by further examination conducted in accordance with the suggestion of the court, and this concluded the evidence in support of the petition. The court did not then expressly declare whether or not the proponent had made out a *prima facie* case in support of the will, nor is it claimed that a finding upon that question was then necessary, though that is suggested as the proper procedure in the opinion on the petition for rehearing In Re Latour, supra, and was the procedure followed by the District Court in Woods v. Woods, supra. If the trial court had been of opinion that a *prima facie* case had not been made, it would no doubt at this point have refused probate, and thus ended the whole matter without the necessity of investigating the grounds of opposition. As it did not do this, but required the contestants to proceed with their case in opposition to the will, it is plainly indicated that the court was

then of opinion that a *prima facie* case had been made by proponent, but reserved its decision upon the petition until the contest could be heard. The trial of all issues was had without a jury. During the hearing of the contest it was agreed that the evidence previously introduced upon the hearing of the petition for probate should be considered as evidence in the contest proceeding.

It is contended that the court erred in ruling that proponent should give as a part of his preliminary case his own testimony with respect to the execution of the will.

It is not strange that the court, having been informed that it was claimed that the name of the testatrix had been signed to the will by another, who was the proponent and present in court as a witness, should have desired to hear this testimony. We may concede that ordinarily a *prima facie* case for probate is made out by the testimony of the subscribing witnesses and the production of the will, and that in such case it would be error for the court, because further evidence is not produced, to refuse probate. And in the case at bar, leaving out of consideration the possible effect at that stage of the proceedings of the fact that the person who signed the name of the testatrix to the will was the sole beneficiary under it, we may for the sake of the argument concede also that at the time of the challenged ruling this proponent had already made out a *prima facie* case which in the absence of further evidence entitled the will to probate. The ruling did not require any additional evidence that was unavailable or even difficult to procure, nor did it require the examination of any hostile witness or the introduction of any harmful evidence. On the other hand, it required only that the proponent himself relate the "things that occurred on the execution of the will." To meet the requirement of the ruling it was not necessary that proponent open on any new feature of the case for he had already undertaken to prove those same things by the two subscribing witnesses. We need not inquire whether the further examination of proponent was so limited as to bring forth no more than the testimony required by the court.

There was no objection to any question propounded in the course of this further examination, and if testimony which was irrelevant at that time and not responsive to the court's direction was permitted to be given without objection, it was not the result of the court's challenged ruling, and cannot be the foundation of an assignment of error. The additional testimony which was then given as the result of the ruling was favorable to the proponent, and claimed by him to be true and corroborative of the other witnesses who had testified before. After hearing it the court in effect held that a *prima facie* case in support of the will had been made, and proceeded to hear the contest. There is nothing in the record to show that in hearing the contest the court did not apply the rule that the burden of proof was upon the contestants as to all the issues raised by the answer to the written grounds of opposition. Whether or not the court was right in requiring the proponent to give the additional testimony on the preliminary inquiry, it seems clear that the result was not prejudicial. We are not sure that the right of the contestants to appear and cross-examine witnesses at this preliminary inquiry was questioned by any timely objection, but however that may be, we think no substantial right of proponent was violated by permitting them to do so. Strictly speaking, contestants were not parties to that inquiry, but we think it was within the court's discretion then to avail itself of their aid, and to permit, as cross-examination, questions to which no objections were made at the time. (In Re Cullberg's Estate, 169 Cal. 365, 146 Pac. 888.)

Section 6713, Wyo. C. S. 1920, at the time of trial, and until amendment by Chapter 28, S. L. 1921, provided among other things that after the hearing of a contest of a will "the judgment of the court shall be rendered upon a special finding, either admitting the will to probate or rejecting it." The findings upon which the judgment was rendered in this case were in the following words:

"The court  *  *  *  does find that at the time the said alleged will purports to have been executed the said Ellen

Boyle Conroy did not have testamentary capacity; that the said alleged will, if executed by the said Ellen Boyle Conroy at all, was procured by the undue influence and fraud of the said C. Sewall, the beneficiary named in said will; and that said alleged will is not the last will and testament of the decedent, Ellen Boyle Conroy.''

That the findings are defective and insufficient to comply with the quoted language of the statute is asserted for the first time in the reply brief filed by proponent. Under our civil code, upon the trial of questions of fact by the court, special findings are not required unless requested by one of the parties. (Sec. 5784, Wyo. C. S. 1920.) It is admitted that there was no such request in the case at bar, but it is argued that by virtue of Section 6713, supra, the right of proponent to have special findings of fact without a request therefor was as perfect as the similar right of a party in the ordinary case after a request as provided by Section 5784. To this we have no answer, but we think the suggested analogy may be carried further, and that, as the reason for special findings is the same whether they be required outright or only after a request, the consequences following a failure to make perfect and sufficient findings should be no more serious in the one case than in the other. (Garner v. State, 28 Kans. 790.) Therefore, our decisions discussing the effect of a failure to make sufficient findings of fact, after a request therefor pursuant to Section 5784, are in point here. If it be conceded that the findings in this case were insufficient, the defect did not go so far as to render the judgment void, but was merely an irregularity or error which, if prejudicial, would be a ground for reversal of the judgment. (School Dist. v. Western Tube Co., 13 Wyo, 304, 328, 80 Pac. 155.) And to be available as a ground for reversal the claimed imperfection in the findings should have been called to the attention of the trial court in order that it might have had an opportunity to make any necessary corrections. (Hilliard v. Douglas Oil Fields, 20 Wyo. 201, 122 Pac. 626.) In any event, under authority of the case last cited, as the proponent has brought to this court a bill

of exceptions containing all the evidence, and we are called upon to consider an assignment of error that the judgment is not sustained by sufficient evidence and is contrary to law, the review here must be upon the whole record, which takes the place of the more particular findings which proponent now claims should have been made by the trial court.

Considering the assignment of error to which we have just referred, we shall now inquire whether the evidence upon the issue of undue influence was sufficient to support the judgment. Doing this, we assume that the proffered instrument was executed by the decedent, and that she had testamentary capacity, though the evidence on this latter issue, as it has important probative value upon the issue of undue influence, must not be disregarded.

We have already mentioned the facts that proponent was sole beneficiary under the proffered will; that he was active in its execution, and that decedent was unable to write. She could read common printed or typewritten matter but not handwriting. The will was prepared by proponent, who testified that in October, 1919, the decedent handed him a written memorandum, assumed to express her testamentary wishes, which she asked him to copy. This memorandum, the proponent says, was written so illegibly that of it he was able to read a few words only, and consequently it was of no use in the preparation of the will. The identity of the writer of the memorandum is not disclosed. Proponent testified further that on discovering that he could not read the memorandum, he suggested to decedent that she tell him what she wished written; that she did so, and he then made a draft of a will expressing her wishes; that he took this, with the undeciphered memorandum, to a fellow employee who made a typewritten copy of the writing proponent had prepared; that that copy is the instrument in question which, directly after its execution on December 23, was delivered by Mrs. Conroy to proponent, who kept it until after her death. The fellow employee who typed the will testified that he saw no paper other than the one he copied, and the ''memorandum,'' frequently asked for at

the trial, was not produced, and its absence was not satisfactorily explained. In the circumstances the evidence in regard to this missing paper was so suspiciously unsatisfactory that we think it did not even tend to show that decedent had the benefit of disinterested advice with reference to the making of the will, and the evidence as a whole amply justified the opposite conclusion.

Proponent and decedent had been acquainted for about two years before the making of the will. During most of that time they lived in adjacent houses, both belonging to her, he being her tenant. Proponent testified that he saw decedent practically every day; assisted her about her home; read her mail; wrote her letters; cared for her in sickness, and did for her the things he would have done for his mother. He says that she had confidence in him, but trusted very few others, fearing they would steal everything she had. It appears from his testimony that she exhibited to him rather unusual forbearance in collecting her rent, and was so desirous of his uninterrupted companionship and assistance that she protested against his absence during a vacation trip which he had planned. In short, if we accept proponent's testimony upon the question of the relation between these parties, there would seem no doubt that it was one of trust and confidence, she depending on him for advice and assistance in the management of her affairs. They were not connected by any tie of blood or marriage.

At the time of the execution of the will, Mrs. Conroy was about seventy years of age. She was suspicious of others, was much alone, and seldom left her own yard. Her family physician, who had known her for 25 years, testified that he had observed her decline as a case of progressive senility and that she had long been mentally disturbed. He and many other witnesses testified that she had been the victim of many delusions and hallucinations which we think it could serve no good purpose to describe. Some of them were such as did not necessarily impair her ability to judge rationally with reference to her testamentary acts. Others,

which had a tendency to destroy her regard for her next of kin and for a high dignitary of the church, beneficiary under the former will, were, to say the least, strong evidence of testamentary incapacity. While several witnesses, including some called by contestants, expressed the opinion that decedent was rational as far as concerned the management of her property, the evidence with reference to a few specific business transactions in which she was interested does not tend to show that she was capable of exercising a very sound judgment in such matters. It is claimed that the will was signed between 8 and 9 o'clock on the night of December 23. By the evening of the following day, when she was examined by her physician, she was almost moribund, in an advanced state of lobar pneumonia, and on the evening of December 25 she died. There was expert evidence which we think tended to show that it was probable that her usual faculties were further impaired on December 23 by the effects of this oncoming fatal disease. We have no hesitancy in saying that her testamentary capacity was at least doubtful.

It is not necessary to cite authorities to sustain the proposition that undue influence, seldom susceptible of direct proof, may be established by proof of facts from which it may be fairly and reasonably inferred.

In this case the attention naturally is first attracted by the fact that the sole beneficiary prepared the will. By the civil law, if a person wrote a will in his own favor, the instrument was void. This rule was not adopted in its full extent by the law of England, and in 1838, in Barry v. Butlin, 1 Curteis 637, 2 Moore P. C. 482, to explain some expressions thought equivocal in the earlier cases upon the subject, the doctrine of the courts of that country was discussed at some length, and the rule stated thus:

"If a party writes or prepares a will under which he takes a benefit, that is a circumstance which ought generally to excite the suspicion of the court, and call upon it to be vigilant and jealous in examining the evidence in support of the instrument, in favor of which it ought not to pronounce

unless the suspicion is removed, and it is judicially satisfied that the paper propounded does express the true will of the deceased.''

The same principle had been stated in almost the same language in the earlier decision of Baker v. Batt, 2 Moore P. C. 317.

The effect of this suspicious circumstance in the trial of an issue of undue influence has been discussed in this country in a multitude of cases which are cited in notes to Snodgrass v. Smith, 15 Ann. Cas. 551 and Kirby v. Sellards, 28 L. R. A. (N. S.) 270. Barry v. Butlin is universally recognized as the leading case. It is cited in almost every later decision, and, so far as we can find, has never been criticized or questioned. In applying the rule, cases seeking and probably attaining the same result, afford examples of conflict in language arising largely from a different use of the terms ''presumption'' and ''burden of proof.'' In our discussion of the case at bar we can avoid the use of those terms as it was avoided in the statement of the rule quoted from Barry v. Butlin.

The preparation of a will by a beneficiary, a suspicious circumstance only, insufficient in itself to render the will invalid, never stands entirely alone. There are always other circumstances, if nothing more than the provisions of the will itself, and usually there are many others, not the same in any two cases, which must all be weighed in the end by the trier of the fact who must then say whether it satisfactorily appears that the will does express the intentions of the deceased.

The trial of this issue, as was said in Miller's Estate, 31 Utah. 415, 88 Pac. 338, quoting from Mooney v. Olsen, 22 Kans. 59, opens a broad field of inquiry. The suspicion excited by the fact that the beneficiary drew the will gains strength when it appears that he is a stranger to the blood of the testatrix (Lyons v. Campbell, 88 Ala. 462; Richmond's Appeal, 59 Conn. 226, 22 Atl. 82); that by the will he takes a large or unreasonable proportion of the estate (Drake's Appeal, 45 Conn. 9; Coffin v. Coffin, 23 N. Y. 9);

that he was the trusted or confidential agent or advisor of the deceased (Lyons v. Campbell, supra; Weston v. Teufel, 213 Ill. 291; Barkman v. Richards, 63 N. J. Eq. 211); that he was present and active at the execution of the will, and took the instrument into his possession (Howell v. Taylor, 50 N. J. Eq. 428; In Re Will of Everett, 153 N. C. 83; Haman v. Preston, 186 Ia. 1292, 173 N. W. 894); that the testatrix was of advanced age, impaired faculties and feeble of mind and body (In Re Elster's Estate, 78 N. Y. Supp. 871; Boyd v. Boyd, 66 Pa. 283); that she was illiterate and forced to sign by mark (In Re Elster's Will, and In Re Will of Everett, supra); that she had no independent and disinterested advice with reference to making the will (In Re Nutt's Estate (Calif.) 185 Pac. 393; Smith's Will, 95 N. Y. 516); that only a short time intervened between the signing of the will and death (In Re Elster's Will, supra; Irish v. Smith, 8 Serg. & R. 573, 11 Am. Dec. 648.)

We have intended to state sufficient of the evidence to show that all these facts or conditions appeared in the case at bar. So startling an array of suspicious circumstances is not found in any case we have seen in the books. There was other evidence tending to show that the proponent by threats and offers of bribes had attempted to induce witnesses to give testimony in his favor. The proponent and the two subscribing witnesses, who are husband and wife, were in intimate association several times during the short interval between the execution of the will and Mrs. Conroy's death, and we infer that their relations were very friendly. Evidence on this point stands out with some prominence because these witnesses testified that their relations with proponent were of a business nature only.

We think, on the issue of undue influence, a strong *prima facie* case was made out in opposition to the will.

The proponent and the two subscribing witnesses testified that the decedent, at the time of the execution of the will, was in her usual health of body and mind, and that she was not then prompted by any suggestion. One of the subscribing witnesses testified that Mrs. Conroy had previously

said that she would leave her property to proponent because he had been good to her. These, as we view the case, were the main items of proof on behalf of proponent tending to show that the will expressed the true intentions of the deceased. It was for the judge, as trier of the facts, to decide as to the credibility of the witnesses, and though this testimony was not directly contradicted by any other witnesses, he was not bound to believe it. (38 Cyc. 1518; In Re Mc-Dermott's Estate, 148 Calif. 43, 82 Pac. 842.) If he did believe it, and accepted it as showing that the instrument was executed with knowledge of and assent to its contents, we think he would still have been justified in finding against the will, however satisfactory such a showing might have been in favor of the will in a case where there was a less weighty accumulation of suspicious circumstances. (Yardley v. Cuthbertson, 108 Pa. St. 395, 56 Am. Rep. 218; McQueen v. Wilson, 131 Ala. 606, 31 So. 94.)

An oral discussion of the evidence by the trial judge, when announcing his decision, has been reduced to writing and now appears in the bill of exceptions. It is clear that this is no part of the record, and has no proper place in the bill, yet we were asked to deduce from it that the trial court misconceived the evidence. To have resorted to it for such purpose would, in our opinion, have been improper, and in considering whether the judgment is supported by sufficient evidence we have felt bound to disregard the criticisms of this oral summing up by the trial court, and have looked only to the evidence in the record. (Phillips v. Coburn, 28 Mont. 45, 72 Pac. 291; Luman v. Mining Co., 140 Calif. 700, 74 Pac. 307; Goldner v. Spencer, 163 Calif. 317, 125 Pac. 347; Guss v. Nelson, 14 Okla. 296, 78 Pac. 170.)

We are of opinion that under the evidence the District Court was right in denying probate of the will, and as we find no prejudicial error in the record the judgment is affirmed.

BLUME, J., concurs. Potter, Ch. J., being ill, did not participate in the final decision.