397 P.2d 805 (1964)
In the Matter of the ESTATE of Aida Pollard WILSON, also known as Aida P. Wilson, Deceased.
Sarah Katherine CONRAD, nee Hickey, Appellant (Proponent in Case No. 2165 and Contestant in Case No. 2168 below),
v.
D. C. MEYER, Executor of the Estate of Aida Pollard Wilson, deceased, Memorial Hospital of Sheridan County, Wyoming, First National Bank of Sheridan, Wyoming, Marjorie Saxton King, David B. Marshall, Appellees (Contestants in Case No. 2165 and Proponents in Case No. 2168 below), and
Ruth Anne Woolbert et al., Appellees.
No. 3239.
Supreme Court of Wyoming.
December 16, 1964.
*806 S. Paul Hazen, Tulsa, Okl., Lathrop, Lathrop & Tilker, Cheyenne, Bruce P. Badley, Sheridan, for appellant.
W. J. Wehrli, Casper, for D.C. Meyer, Memorial Hospital of Sheridan County, Wyo., and First Nat. Bank of Sheridan, Wyo.
Henry A. Burgess, Sheridan, for Marjorie Saxton King.
Robert E. Holstedt, Sheridan, for David B. Marshall.
Lawrence A. Yonkee, Sheridan, for D.C. Meyer, First Nat. Bank of Sheridan, Barbara Hackett, Patricia Brinton, Kathleen Wilson, Ralph Hylton Wilson, Gwendolyn Hoffman, St. Joseph's Orphanage of *807 Torrington, Wyo., and Holy Name Church of Sheridan, Wyo.
Before PARKER, C.J., and HARNSBERGER, GRAY and McINTYRE, JJ.
Mr. Justice McINTYRE delivered the opinion of the court.
Appellant, Sarah Katherine Conrad, nee Hickey, is the proponent of what is claimed to be a holographic will of Aida P. Wilson, deceased, and the contestant under a purported December 26, 1961 will and an April 11, 1962 codicil thereto admitted to probate as the last will and testament of such deceased.
Motions were made by parties on either side for summary judgment, it being contended by both sides that there was no genuine issue of fact to be tried. The district court agreed there was no dispute as to material facts and held as a matter of law that the instrument claimed as a holographic will was not the last will of decedent. Summary judgment was entered accordingly, and the proponent of such will has appealed. She claims not only that the court erred in not admitting the proffered holographic will to probate but that it also erred in denying her contest against the will which was admitted to probate. As to it, appellant claims undue influence.
According to the facts shown by affidavits, depositions and admissions of the parties and not contested on either side, Aida Wilson made a will in January, 1960, while in New York. It had been drafted by a firm of New York lawyers. This will provided that in the event the husband of the testatrix died prior to 60 days after her own death, the residue of her estate would go to Memorial Hospital of Sheridan County, Wyoming.
Circumstances were subsequently changed by the unexpected death of her husband on October 12, 1961. Thereafter Mrs. Wilson, on December 26, 1961, executed a new will drafted by attorney William D. Redle of Sheridan, Wyoming. It was in general comparable to the New York will.
The testatrix was in ill health and confined most of the time to her ranch home at Big Horn, Wyoming, when she executed the will on December 26, 1961 and up until she went to the hospital with a broken hip in September, 1962. She died soon afterwards. In the meantime, it is agreed  or at least not denied  that on February 19, 1962, she wrote the first part of what is claimed as the holographic will offered for probate.
The instrument offered as a holographic will is not clearly legible or intelligible and we do not agree it says what appellant claims. However, before considering what the instrument does or does not say, we think it better to determine whether it could be held to be a holographic will and the last will of deceased if it were found to say what its proponent claims.
This is what the appellant claims it says:
 "Tel. N.Y. Oregon 4-4225
"I leave to Tips niece, Marjorie Saxton
 Marjorie
daughter of / Apt. 13, 520 E. 23rd St. N.Y.N.Y.
Oregon 4 4225 Ranch, home, and all contents to her to
have sell or live in for rest of her life or until
she sells it. Have all jewlery in safe at First Natl.
Bank Sheridan, see D.C. Meyer or Davis. $1000.00 to
John, 1,000 to Grace & 1,000 to Joyce Cody,
 churches & Hospitals
all rest to my nearest relative & all jewlery in
First National Bank also silver in safe in Bank.
 "Aida P. Wilson
 "Feb. 19th, 1962
"I leave all money to Sarah or her projeny. All money left in estate during my lifetime after my death to go to Sarah Hickey. All jewlery which came from Tip to go to Marjorie & all jewlery which came from Mother & me to go to Sarah & her children."
That part of the purported holographic will, which follows the signature and date, is separate from the rest, in that it appears on the back of the sheet of paper which *808 contains all of the former part. Appellant freely admits the portion on the back was not written when the portion on the front was. In fact, she asserts and consistently contends that the portion on the back of the page was placed there after May 22, 1962, whereas the portion on the front was written and dated February 19, 1962.
Counsel for the proponent of the holographic will argues that the writing on the back became a part of the entire will and it matters not that it was not separately signed. He recognizes that our statutes pertaining to such wills clearly require a holographic will to be entirely written and signed by the hand of the testator himself. See § 2-55, W.S. 1957.
Numerous cases are cited, and others just as applicable could be cited, where it has been held that a holographic will need not necessarily be signed at the end. Signatures appearing at the beginning of such a will or elsewhere in the instrument have been held to be sufficient. We do not need to decide whether, under similar circumstances, we would follow these cases.
The determining factor, in deciding whether any particular writing offered as a holographic will has been sufficiently signed to meet the statutory requirement of signing, is the intention of the testator. See 94 C.J.S. Wills § 205, pp. 1046-1047; and Annotation 19 A.L.R.2d 926, 928.
A long list of cases is set out in the 19 A.L.R.2d annotation, on pp. 929-930, which recognize the principle that, whereever the signature appears, it must have been affixed with the intent to authenticate the holographic instrument. On pp. 930-931, it is shown that a number of cases have held it must affirmatively appear from the instrument itself that the name of the decedent appearing on the holographic document was intended as his signature; and in several jurisdictions the rule has been applied that extrinsic evidence is admissible in determining whether the name written by the testator was intended as an authenticating signature.
But regardless of whether we were to say, for purposes of the present case, that the intention of the decedent must affirmatively appear from the instrument itself or that such intention could be shown from extrinsic evidence, the result would be the same. The only possible inference to be drawn from the instrument in this case, and from the facts before the court, is that when, on February 19, 1962, Aida P. Wilson signed what then had been written, at the end thereof, she did not and could not have intended it to be a signing or execution of what was to be written on the back more than three months later.
Therefore, not because of the place of signing, but because nothing is offered to show that the signing on February 19, 1962, was intended as an execution and signing of what was written after May 22, 1962, we must hold the portion on the back of the sheet to be no part of the holographic will made and signed on February 19, 1962  if indeed any holographic will at all was made.
Still assuming, without so deciding, that a holographic will was made February 19, 1962, it was in any event revoked on April 11, 1962, at which time Aida P. Wilson made a codicil to the will which is now admitted to probate and which was dated December 26, 1961. The codicil made no reference to a holographic will of February 19, 1962. Instead, it stated that except for the changes herein made "I hereby reaffirm and readopt the provisions of my Last Will and Testament dated December 26, 1961."
Pursuant to the general rule in that regard and our statute on the subject, the April 11, 1962 codicil had the effect of revoking any will (holographic or otherwise) executed prior thereto, except for the will of December 26, 1961, because the codicil republished and reestablished the December 26, 1961 will, making it speak from the date of the codicil. See 95 C.J.S. Wills § 303, p. 96; and § 2-51, W.S. 1957.
Even if it were assumed that a will had been made on February 19, 1962 and that *809 the effect thereof was to revoke the will of December 26, 1961, the subsequent codicil of April 11, 1962 would still have the effect of reviving the December 26, 1961 will, which has been shown still to be in existence. See Annotation 33 A.L.R.2d 922, 925, where the governing rule is stated thusly:
"Although in many of the cases collected herein it has been held, for any of a number of reasons, that the codicil in question did not effect the revival of a prior revoked will or codicil, no case has been found in support of the proposition that the revival of a will or codicil which has been revoked, but which is in existence, cannot be effected by means of a subsequent codicil. * * *"
Cited in support of the above rule are cases from California, Iowa, Kansas, Kentucky, Louisiana, Montana, New York, North Carolina, Ohio, Oregon, Pennsylvania, Virginia, West Virginia, Wisconsin, England, Ireland, and Canada.
Counsel for the proponent of the holographic will does not dispute the general rule that the revival of a revoked will which is in existence can be effected by means of a subsequent codicil, and he cites no cases to the contrary. He does, however, erroneously assume "there is no revival of once revoked wills in Wyoming." This assumption is supposedly based upon language employed in In re Stringer's Estate, 80 Wyo. 389, 343 P.2d 508, 516, modified and rehearing denied 345 P.2d 786.
It is hard for us to realize how counsel could go so far afield and read into the Stringer opinion what he attempts to read into it. The author, Justice Harnsberger, commented that legislative silence relative to the question of revival does not incline the court to believe a presumption is created that a will revoked is brought back into life  the meaning being, brought back into life by the subsequent destruction of a later will.
If counsel had read the opinion with ordinary care, he would have noted that the discussion related to whether or not there was sufficient evidence to raise a presumption that the destroying of a 1952 will by a testator was done with the purpose of reestablishing or reviving a 1949 will. There was found not to be sufficient evidence to raise such a presumption.
Justice Harnsberger's opinion clearly recognizes that courts have accepted the theory that, in the absence of statutes, the subsequent destruction of a revoking will does not have the effect of reviving the former will unless there is evidence that it was the intention of the testator to revive the former will. The principle was accepted that the question of revival is one of pure intention without there being any presumption either for or against revival arising by virtue of the destruction of the revocatory will.
This led to the conclusion, in the Stringer case, that our legislature has spoken its last word and there is legislative silence on the matter of revival, which simply means there is no presumption of revival by the destruction of a subsequent and revocatory will. Nothing more was said or implied in the Stringer case on this subject.
In the case at bar, we are not concerned with the matter of a presumption because the evidence of revival does not rest upon a presumption. The codicil clearly and unequivocally declared that the testatrix reaffirmed and readopted the provisions of her will dated December 26, 1961.
Concerning the contest which appellant brought against the December 26, 1961 will, undue influence is claimed. No improper influence is claimed on the part of any of the beneficiaries but rather on the part of the attoreny who drafted the will and the codicil and supervised the execution of both. Nothing was presented, however, to show the actual exercise of any undue influence.
It goes without saying that clear proof of undue influence is required in order that a solemnly executed testament may be set aside for undue influence. In re Draper's Estate, Wyo., 374 P.2d 425, 431.
*810 Affidavits and depositions offered on behalf of those who stand on the December 26, 1961 will and on the April 11, 1962 codicil, and who oppose the holographic will, show that no influence was exerted by the attorney, Mr. Redle, and in fact that such suggestions as he had made to the testatrix were ignored. This evidence also negatives the idea of any undue influence by other persons and points up the similarity of the December 26, 1961 will to the New York will, which had been made away from all persons connected with the December 26, 1961 will.
On the other hand, nothing except the accusation itself is suggested by affidavits, deposition or otherwise to show that Mr. Redle or any other person actually exercised any undue influence over Mrs. Wilson in the making of her will. Also, as we have already indicated, no mention has been made of any evidence which would be available, tending to show undue influence.
We find no dispute of any of the facts upon which our decision is based, except as to the matter of undue influence. As to that issue, appellant has not come forward with anything to show that undue influence could be proved if a trial on the issue were had. We therefore agree with the district court in its finding that there was no genuine issue as to any material fact and nothing to be tried.
We have examined carefully contentions made by appellant that the court abused its discretion by changing the venue to a county designated by the court and not to one requested by appellant; and by improperly consolidating the cases having to do with the petition for probate of the holographic will and the contest of the December 26, 1961 will and April 11, 1962 codicil. We find no abuse of discretion in either of the actions complained of and no prejudice to appellant in either case. Under the circumstances of this particular case, the granting of summary judgment renders unimportant the county to which venue was changed because the matter of venue has no bearing on the decision rendered. It also effectively eliminates any claim of prejudice caused by consolidation, because the result would be the same regardless of whether judgment were rendered in the same or in separate proceedings.
Irregularity on the part of the court is claimed in assessing costs against appellant. The contention seems to be predicated upon the proposition that there is no provision in the laws of Wyoming for assessment of costs in a proceeding to admit a will to probate.
We think, however, that §§ 2-76, 2-83, and 2-88, W.S. 1957, construed in pari materia, sufficiently authorize the assessment of such costs. Section 2-76 authorizes any person interested to contest a will, without expressly specifying whether the contest is to be before or after the will is admitted. Section 2-83 expressly authorizes a contest within six months after a will has been admitted to probate. Section 2-88 provides that if the probate of a will is revoked, as was the probate of the holographic will in this instance, the costs must be paid by the party who resisted the revocation, or out of the property of the decedent, as the court directs.
It seems clear to us that § 2-88 applies to any contest whether based upon the authority of § 2-76 or § 2-83 and whether before or after the will is admitted. In other words, it would apply to a proceeding to admit a will to probate. Additionally, we might point out that § 2-24, W.S. 1957, provides that judgments in probate proceedings on the issues joined, "as well as for costs," may be entered and enforced as in civil actions.
We cannot say whether costs were properly taxed, as far as specific items and amounts are concerned, because appellant has not detailed the costs for us or specified any specific item as erroneous.
No other prejudicial error has been found in any of appellant's specifications, and we conclude the judgment of the district court should be affirmed.
Affirmed.