Conrad Abraham ZULLIG, a/k/a Conrad Zullig, a single man, individually and by and through his next friends, et al., Appellants (Plaintiffs below),

v.

John William ZULLIG and Linda Zullig, husband and wife, Appellees (Defendants below).

No. 4088.

Supreme Court of Wyoming.

Oct. 25, 1972.

Ronald D. Vanderhoef, of Lonabaugh & Bonner, Sheridan, for appellants.

Harry F. Schwartz, Sheridan, for appellees.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

This is a proceeding in which Conrad Abraham Zullig, individually and by and through his next friends, Barbara Finch, Evelyn Hoge, Leona Mae Vaughn, and Conrad Allen Zullig (these last four named being his children) seek to have two deeds conveying certain lands and a one-half interest in other lands to John William Zullig (another son) set aside and declared invalid. Linda Zullig, the wife of John William Zullig, is joined as a defendant.

From an adverse ruling by the trial court plaintiffs, appellants here, prosecuted

this appeal. Appellants based their claim in the district court on these grounds: That Conrad Abraham Zullig lacked the capacity to consciously dispose of his property, and that the deeds were procured as a result of undue influence, persuasion, and misrepresentation. They reiterated the first claim and asserted by reason of advanced age, physical infirmity, drinking problems, and his dependent condition that these deeds were secured during a period of incapacity; and that the real consideration for the conveyance of this property was defendants' agreement to care for, feed, and clothe Conrad Abraham Zullig for the remainder of his life.

Upon appeal appellants assert three grounds for reversal, they being that the father, Conrad Abraham Zullig, lacked the necessary and required legal capacity to convey or dispose of his property; that a fiduciary relationship existed between grantor and grantee in the deeds and the court erred in finding grantee had carried the burden of proving the absence of constructive fraud or undue influence; and that appellees breached their agreement with the father by failure to fulfill the agreement for his maintenance and care, this being a condition subsequent, and this breach effects the cancellation of the deeds.

In the outline of that factual situation we must honor a basic precept and assume appellees' evidence is true without consideration of the conflicting evidence and give thereto every favorable inference which may be reasonably or properly drawn therefrom.[1]

On September 13, 1969, Conrad Abraham Zullig was the owner of an undivided one-half interest in a small ranch in Sheridan County, Wyoming, the other one-half interest having been theretofore conveyed by him to his son Conrad Allen Zullig in 1958, and the sole owner of 6.82 acres carved out of the ranch lands and upon which were situate the house and buildings. On that date he conveyed by separate warranty deeds his estate in these lands to his son John William Zullig, reserving only unto himself a life estate in the smaller tract. These are the conveyances which are sought to be set aside.

John, the younger son and the youngest child in the family, had been serving in the United States Navy and was discharged early in the year 1969, upon which discharge he went to Montana to help his sister, whose husband had just died. He stayed there approximately three weeks then returned to Sheridan to see his brother and uncle. At that time he was en route to Casper with his wife where he intended to enroll in college or seek employment. He did not know at that time that his father was living on the ranch and believed he was in the Soldiers' and Sailors' Home at Buffalo, Wyoming. He changed his plans after his arrival when his father asked him to stay and take care of the place and look after him, and if he would do this his father would convey these lands to him. John and his wife moved into the home and the father lived with them continually from March 1969 until September 1970 when he departed with his daughter Barbara to Worland.

When this arrangement was made the house was a mess and unclean, it being then occupied by Conrad, the other son, and the father. It had no hot water or plumbing system and Conrad's irregular hours and employments left a great deal of the responsibility for the father's care and feeding upon his own shoulders. After John and Linda moved in they started doing some plumbing and installed a hot water heater and otherwise made the house more habitable. There were three meals a day prepared by Linda for them.

On September 12, 1969, John and his father went to the office of James Birchby to get these two deeds drawn. Birchby advised them he was unable because of his other commitments to do this, but he then

1. Citation seems unnecessary, but see cases collected in 1 Wyoming Digest, ☞931(1), Appeal and Error, p. 378, et seq., and 1972 Cum.P.P.

requested Edward Birchby to help them. Edward also had other commitments and he asked John and his father to return that afternoon. They returned and after some conversation were told by Birchby that they must get the legal description of the land and that they could get this at the court house or bring in an abstract. By appointment they returned on Saturday morning with this information on a typed paper, which Birchby believed came from the county clerk's office. The deeds were drawn by Birchby and acknowledged by a secretary in Birchby's presence. The father was not under the influence of intoxicating liquor from Birchby's observation and he was satisfied that he understood what he was doing because he had talked to him approximately thirty minutes. John had asked Birchby to talk to his father to make sure he was doing this freely. The office record shows the father paid for drawing these deeds. All the time that John and his father were in the office John did nothing and said nothing urging his father to do this.

Linda, John, and his father continued to live together in the home until September 1970 when he moved to Worland to live with his daughter Barbara, where he has lived since that time. He and the other appellants had consulted a lawyer and determined upon this action at that time.

There is no evidence of discord until the summer of 1970 when there was apparently some trouble between the appellees and the father after they attempted to limit the amount of beer he drank but the older son supplied him with beer whenever he wanted it. At times when he drank too much beer he was apparently slovenly, dirty, unpleasant, and refused to eat. He lost twenty pounds during this period.

There is little evidence in the record as to Conrad Abraham Zullig's incapacity or lack of understanding at the time of the execution of these deeds. The only evidence proffered by appellants even touching this question was the testimony of County Clerk B. B. Hume that sometime in the fall of 1969—he thinks a few days before the recording of these deeds—John and his father came into his office to have a deed prepared and that the father spoke incoherently at that time and did not appear to understand what he was doing. Hume did not know if he had been drinking that day. Contrasted to that, the record shows the father kept his own bank account, paid his own bills, and kept account of his money. It is to be further observed that he did reserve a life estate in the home. There is no suggestion in the testimony of other appellants, in spite of their opportunities for observation, of any incapacity except that of age and of drinking. The written record of his testimony at the trial does not disclose any lack of understanding or incapacity.

The trial court as the trier of the facts was obligated to determine this question from the evidence. We are bound thereby and cannot properly substitute our judgment for these findings and they are conclusive if supported by competent evidence.[2]

The second contention of appellants is based upon an assumption which we are asked to accept and which must be accepted if their position is supportable. This is borne out by this statement in their brief as follows:

"Where, as here, grantor and grantee are father and son and the son cares for the father, *it can only be reasonably concluded that a fiduciary relationship existed.*" (Emphasis supplied.)

After indulging in this assumption, appellants then cite in support of their position the case of Baldwin v. Birchby, Wyo., 346 P.2d 278. In that case a confidential relationship between the father and two sons was admitted. In addition one of the sons was a lawyer who drew the deed attacked, and although the father was 95 to 96 years of age with a "played out body" the court upheld the

---

2. This is so firmly engrafted in our law, citation is repetitious. See 1 Wyoming Digest, ☞1010(1), Appeal and Error, p. 400, et seq.

deed. Appellants, in suggesting this assumption, overlook a very substantial matter, i. e., that it is their burden to establish a confidential or fiduciary relationship or a dominant position of the child before the burden falls on the grantee, Amado v. Aguirre, 63 Ariz. 213, 161 P.2d 117, 121, 160 A.L.R. 1126; Nelson v. Brown, 164 Ala. 397, 51 So. 360, 364; 59 Am.Jur.2d Parent and Child, § 146, p. 247. It has been said in a matter involving a gift from a parent to a child when undue influence is asserted that the burden rests on the one asserting the invalidity, Salvner v. Salvner, 349 Mich. 375, 84 N.W.2d 871, 875. It has been held that even where there is a confidential relationship the burden is not upon the child as grantee to show the absence of fraud and undue influence unless it be shown he exercised some activity in procuring the deed or if the transaction was without consideration, Osterberg v. Osterberg, 68 Cal.App.2d 254, 156 P.2d 46, 49. In addition to this we cannot say there is any other evidence that John dominated his father or that his father placed any particular confidence, faith, or reliance upon John in the conduct of his affairs. We have held that a dominant position of a child will not be presumed from the relationship alone, In re King's Estate, 49 Wyo. 453, 57 P.2d 675, 678.

■ Another clear and complete answer to this contention, however, lies in the testimony of Conrad Abraham Zullig, the real party in interest here. He does not suggest in any manner he was overpowered or that execution of the deed was not a free and voluntary thing. His only complaint is that his son and wife have not properly cared for and fed him.

■ Appellants' last contention is that the deed having been granted subject to condition, which was the consideration therefor, upon breach of the condition grantor could defeat the estate created in John, and appellants insist it is a condition subsequent. The deeds herein involved are simply conveyances with the exception of the reservation of a life estate in the father. There is no statement therein of any agreement for support as a condition thereof, nor right of re-entry, and nothing is asserted as a condition.[3] The father in his testimony does not assert any condition. He only asserts dissatisfaction with the performance. We have heretofore noted that such conditions are not favored and the necessity that the plain intention of the parties to create such an arrangement appear, J. M. Carey & Brother v. City of Casper, 66 Wyo. 437, 213 P.2d 263, 268.

■ There is, however, another compelling answer to this contention. Appellees performed their agreement from the time they moved into the home, and particularly from the date of the deed until early the next September, approximately one year, and for the seven months prior thereto had taken care of the father. John and his wife had further foregone their plan to go to Casper to seek employment or attend Casper College, so there is at least partial performance and real consideration. Strangely, no request or demand for different treatment or complaint was voiced to appellees by either the father or other children prior to the filing of this suit. The performance of this obligation has also been made impossible by the father's removal from the premises and his testimony that he would not be willing to accept this now. Under these conditions it is obvious that any further performance on the part of appellees is impossible. If this were conceded arguendo to be such condition subsequent as might defeat the estate, it would not be binding upon grantor if he makes such performance impossible, Turner v. Turner, 186 Ga. 223, 197 S.E. 771, 772, 116 A.L.R. 1396; 26 C.J.S. Deeds § 156(b), p. 1068.

A case of particular interest is that of Craig v. Beach, 303 Ky. 516, 198 S.W.2d 220, because of the similarity in the factual situation. That case involved an agreement by the defendants to provide the plaintiff with a home and generally care

3. See generally 26 C.J.S. Deeds § 141(d), p. 1032, et seq.

for and maintain him in exchange for a deed to a house. Plaintiff lived there for some time and was treated as a member of the family. He became untidy in his personal habits and a one-room building close to the house was repaired and furnished for him. Some ten months later plaintiff left and never returned and shortly filed an action to cancel the deed. The court in that case held that the performance of such contract does not require perfection and that although the persons who had agreed to the care of plaintiff were under obligation to supply the same there was a corresponding duty on the part of plaintiff to respect their feelings and conform as nearly as possible to the habits of their household. While plaintiff said he was dissatisfied with the arrangement, he pointed to no specific thing which would justify his dissatisfaction. The court said that since the situation was not the fault of the defendants he could not now hold them responsible for something of his own making, 198 S.W.2d at 222.

The judgment is affirmed.