**Sandra L. BRUG (formerly Sandra L. Matheny), Appellant (One of defendants below),**

**v.**

**Darlene J. CASE and Jack Matheny, Appellees (Plaintiffs below).**

**No. 5094.**

Supreme Court of Wyoming.

Sept. 14, 1979.

Bruce P. Badley and Harlan W. Rasmussen, of Badley, Rasmussen, Shoumaker & Newton, Sheridan, for appellant.

David A. Scott and R. Patrick Dixon, of Murane & Bostwick, Casper, for appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROSE, Justice.

This matter arises by way of a dispute between the grantor's third wife and the grantor's children of a prior marriage over the validity of a deathbed deed to the wife conveying the husband's ranch. The widow appeals from a decision of the district court declaring the deed invalid for the reason that it was procured through undue influence. This case presents three related issues: Which party had the burden of proof? What is the standard of proof?, and Was the trial judge's finding supported by the record? We will affirm.

On May 24, 1977, William E. Matheny died of cancer, survived by his wife, Sandra Matheny (now Sandra L. Brug) and two adult children, Darlene J. Case and Jack Matheny. William E. Matheny had learned of his disease in 1976, and entered Sheridan County Memorial Hospital on May 8, 1977. By the following day he was aware that he was terminally ill. While in the hospital, Matheny executed several documents of importance to this appeal.

On May 10, Mr. Matheny executed a will bequeathing a 1958 truck to his son and son-in-law, all other vehicles, including a motorhome, to his wife, and devising and bequeathing the residue and remainder of his estate to his son, daughter, and wife, in equal shares. At that time Matheny assembled the three principal beneficiaries and their families and asked them if they were satisfied with the provisions of the will leaving each of them one-third of the residue—mainly his ranch. The record does not reveal that any complaints were voiced at that time. The will was prepared by Attorney William D. Redle, who testified that so far as he knew he was the only attorney employed by the decedent between 1970 and the time when the decedent entered the hospital on May 8, 1977. Mr. Redle had handled other matters for Matheny.

On May 10, Mr. Redle drafted and Mr. Matheny executed a power of attorney in favor of, "My wife Sandra Matheny, my son, W. Jack Matheny, and my daughter Darlene J. Case, or any one of them." Mr. Redle testified that Matheny executed the power of attorney to allow his family members to take care of the business if Matheny were unable to do so.

On May 15, Mr. Matheny executed a warranty deed to his wife conveying his ranch to her in consideration of love and affection. Also on that date, he executed a ten-year lease of his ranch—in which his wife joined as lessor—to Leon and Anne Oedekoven. While the trial court set aside both instruments on the ground of undue influence, only Sandra Brug has perfected an appeal. Both documents were prepared by Oedekovens' regular attorney, Bruce P. Badley. Sandra Brug and/or the Oedekovens assembled some eight or ten people—not including Matheny's children—to witness the execution of these two instruments. On that Sunday afternoon, May 15, 1977, Mr. Oedekoven visited one of the treating physicians, Dr. William Williams, at the doctor's residence and prevailed upon him to sign a statement to the effect that Matheny was legally competent.

On May 19, Mr. Matheny executed another will prepared by Attorney Redle bearing substantial similarity to the May 10 will. This will, however, purported to grant to the wife the right to live in the ranch dwelling, subject to numerous conditions consistent with a current claim of ownership by the testator of the ranch.

The record is clear that Matheny was in a great deal of pain throughout his hospital stay and that he was given narcotics and other medication to combat the pain. He was also given medication to enhance the effects of the narcotics. Even so, the parties stipulated that Matheny was competent to execute the May 19th will.

Dr. Williams, who had signed the statement on May 15 that Matheny was legally competent, testified that he had doubts about Matheny's competence—because of the pain-killing drugs—but that he had signed the statement because he believed that he was merely helping the Mathenys and Oedekovens to administratively facilitate a matter on which they were in agreement. Dr. Williams testified that he did not know that a deed was involved in the issue of Matheny's competence. Another treating physician, Dr. Herbert Adams, testified that in his opinion the drugs administered to Matheny impaired his "mental function." [1]

Before going into the hospital, Matheny sold his cattle and ranch machinery, and the approximately $60,000.00 in proceeds were deposited in the Mathenys' joint bank account. A substantial portion of these proceeds were used to purchase a motorhome, but Matheny gave the motorhome to Sandra Brug before he executed the May 19 will, and she received the balance of the account on his death. Before executing the May 19 will, Matheny also signed over to Sandra Brug all his other motor vehicles, with the exception of a 1958 truck, which he transferred to his son and son-in-law.

With respect to the deed, Sandra Brug testified at trial that Matheny informed her that he wished to change his will so that she would get half. She then testified that after consulting with Redle and Badley, she informed her husband that it would be necessary for him to deed her the ranch if he wished her to have more than one quarter. Her testimony on this point is somewhat confusing and excerpted here.

"Q So after talking to Mr. Badley, apparently you were of the impression that your husband couldn't leave you more than one-fourth of the ranch; is that correct?

"A Mr. Redle told me that.

"Q Mr. Badley agreed with Mr. Redle?

"A Yes, we looked it up in some law books there.

"Q Did you discuss this with your husband?

"A Yes.

   *    *    *    *    *    *

"Q Did you tell your husband about Mr. Badley's suggestion that he sign a deed to the property?

"A I told him.

"Q I beg your pardon.

"A I told him everything that we said in the office, and I did tell him about the deed.

"Q What did he say to you?

"A He shook his head, yes, and then he said, he said—he said, if I make this deed out then it wouldn't be taken away —Mr. Badley said Jack and Darlene [Matheny's two adult children] could not take it away from you, and I said, yes.

"Q Was that the end of the conversation?

"A No.

"Q Tell me what else he said.

"A I said, Mr. Badley had told me that the only way that he could do it was by proving that you are incompetent. He said, I am not incompetent. He said, I was afraid of that." [Bracketed matter supplied]

We are moved to observe that Brug was incorrectly stating the law even if she told Matheny that she would be restricted to one-fourth of the estate only if Matheny's will was invalidated. If Matheny were to die intestate, Brug, as the surviving spouse, would receive one-half of the estate and his children would receive the other half. § 2–3–101(a)(i), W.S.1977. It is, of course, not known whether this statute provided incentive for the children to stipulate to Matheny's competence at the time he executed the second will. Brug would be restricted to only one-fourth of the estate if

1. Dr. Adams testified from personal experience—as a patient—that one of the narcotics administered to Matheny, Dilatin, had caused him, Adams, to perceive the following: "The bed came up, the wall collapsed. They looked like an accordion. I thought I was going to float out the window."

Matheny were to execute a valid will leaving her less than one-fourth of the estate and Brug elected to take against the will. § 2–4–101, W.S.1977.

Sandra Brug testified that she was aware that the deed to her meant that nothing would pass under the May 19 will.[2] She also testified that Matheny and his attorney, Redle, discussed the rewriting of the will which culminated in the May 19 will and that she never informed Redle of the deed to her. She testified that Matheny had suggested she not tell Redle about the deed because Matheny did not want the children to know and "come in and cause an upset." In contrast, there was testimony from several people, including Brug, to the effect that Matheny was a strong-willed individual who usually got his way.

With respect to the May 19th will, Attorney Redle testified that he visited the Mathenys on the afternoon of May 18. He said that Mrs. Matheny [Sandra Brug] "was indicating that she needed greater protection [more than she was getting under the May 10 will], and Mr. Matheny on several occasions said   .   .   .   that the ranch was his and he could do with it as he pleased and he wanted her to have the use of the dwelling until she remarried or until the ranch was sold." Mr. Redle also testified that he brought the new will to Matheny on the morning of May 19 and that "Mr. Matheny was very satisfied with the will." Redle further testified that he assumed that Matheny still owned his ranch on May 18 and 19.

Despite the medication, there is uncontradicted testimony that Matheny was generally coherent. He engaged in conversations with friends and family members who testified that his mind appeared sound. There is uncontradicted testimony of love and affection between Mr. Matheny and Sandra Brug. A long-time neighbor and friend, S. Edward Sharp, testified that Matheny told him on May 15, "I got the best wife in the world   .   .   ." He further testified that

he told Matheny, "if you are going to do anything for her, you'd better do it pretty quick, bud," and that Matheny replied, "I'm going to today." On cross-examination Sharp testified that he was unaware that Matheny had already provided for Sandra Brug in his will of May 10.

As the parties have done in their briefs, we will make use of the law of undue influence developed in will contest cases, as well as in deed contest cases. 26 C.J.S. Deeds § 62a(3) (1956).

In remarks after closing argument, the trial judge stated that he would have difficulty resolving conflicts in the testimony between some witnesses he deemed credible and said, "Very likely the burden of proof will be what the Court will have to resort to to resolve the case.   .   .   ." The trial judge then indicated that for policy reasons he would probably place the  burden of proof on Sandra Brug, the deed proponent, and on the Oedekovens, the lease proponents.

In his Judgment and Decree, the trial judge, after a discussion of policy considerations, placed the burden of proof upon Sandra Brug to disprove undue influence. But the judge also stated—in his Judgment and Decree—presumably after time for more mature consideration of the case—that "the evidence preponderates in favor of the plaintiffs' claims; and taken with all the other evidence in the case, a determination in favor of the plaintiffs is required."

Appellant argues in her brief that the trial judge incorrectly assigned the burden of proof. In his remarks after the closing arguments, the trial judge seemed to indicate that by burden of proof he meant the burden of the risk of nonpersuasion—that is, if the evidence were equally balanced, the party on whom the burden of proof fell would lose. However, since the trial judge did find that the evidence preponderated in favor of the appellees, we need not consider the trial judge's factual finding premised on

2. She agreed with this on cross-examination. We need not inquire whether this was completely true inasmuch as Matheny was apparently owed some grazing fees by the Trail Creek Grazing Association to be paid in the future.

a difficult legal issue.[3] Instead, we need only consider whether the judge's factual finding was supported by the record.

■ Appellant urges that undue influence must be proven by "clear proof." E. g., *In re Draper's Estate*, Wyo., 374 P.2d 425, 431 (1962), and *In re Wilson's Estate*, Wyo., 397 P.2d 805, 809 (1964), reh. den. 399 P.2d 1008 (1965). This is true, but a standard of proof higher than a preponderance of the evidence is not required of the deed or will contestant for every claim the contestant makes. In *Baldwin v. Birchby*, Wyo., 346 P.2d 278, 280 (1959), this court said that proof of a confidential relationship between father and sons would suffice to shift the burden of showing fairness, good faith and lack of undue influence to the sons with respect to a deed from the father to the sons. In *Zullig v. Zullig*, Wyo., 502 P.2d 198, 201–202 (1972), this court indicated that the burden of proving undue influence would shift to the proponent of the instrument if a confidential or fiduciary relationship were established and if the person charged with undue influence exercised some activity in procuring the deed. See, also, *In re Conroy's Estate*, 29 Wyo. 62, 211 P. 96, 99 (1922). We cite these cases, not to definitively settle the question of who has

---

**3.** Conceptually, the burden-of-proof issue is not difficult. The term is sometimes used to refer to the burden of the risk of nonpersuasion, and sometimes to the burden of production. The difference between the two concepts becomes important when the evidence is equally balanced. As said in 79 Am.Jur.2d, Wills, § 425, fn. 55 (1975):

". . . The party who is charged with the burden of proof in the sense of the risk of nonpersuasion on the issue of undue influence must preponderate on the proof in order to win, but his adversary may win by merely meeting the evidence against him."

79 Am.Jur.2d, Wills, § 425, supra, states that the majority of authorities hold that the burden of proof with respect to the risk of nonpersuasion is on the will-contestant who charges undue influence and that such burden remains on him throughout the trial.

In conducting legal research, it is often difficult to determine precisely what a court means in discussing the burden of proving undue influence. The difficulty is illustrated by a consideration of our own cases.

The most detailed discussion by this court of who has the burden of proving undue influence in a will contest is found in *In re Nelson's Estate*, 72 Wyo. 444, 266 P.2d 238 (1954). Chief Justice Blume discussed whether certain suspicious circumstances would give rise to an inference, a presumption of fact, or a presumption of law that a will was the result of undue influence. The court indicated that only a presumption of law would shift the burden of proof to the person defending the will. Although the court did not find a presumption of law in the case it was considering, it said:

". . . It may be, however, that if the inference is strong, as when a party charged with exercising undue influence takes quite an active part in procuring a will, courts might consider the inferences to be drawn as being of the same dignity as a presumption of law. . . ." 266 P.2d at 256.

In an earlier case, affirming the setting aside of a will as being the result of undue influence, this court in *In re Conroy's Estate*, 29 Wyo. 62, 211 P. 96 (1922), deliberately avoided the use of the term burden of proof. Instead, it adopted the following analysis from an English case:

" 'If a party writes or prepares a will under which he takes a benefit, that is a circumstance which ought generally to excite the suspicion of the court, and call upon it to be vigilant and jealous in examining the evidence in support of the instrument, in favor of which it ought not to pronounce unless the suspicion is removed, and it is judicially satisfied that the paper propounded does express the true will of the deceased.' " 211 P. at 99, quoting *Barry v. Butlin*, 1 Curteis, 637, 2 Moore P. C. 482.

In a more recent will case, this court discussed the circumstances which had to be present "before the proponent of the will has any obligation to present evidence showing that undue influence did not exist . . . ." *In re Draper's Estate*, Wyo., 374 P.2d 425, 430–431 (1962).

In a later suit to set aside, on the grounds of undue influence, deeds from a father "in the neighborhood of 95 or 96 years of age," this court stated without much discussion that "the burden of proof was upon the sons [one of whom was an attorney who prepared the deed in question] to show their fairness and good faith respecting the deceased's execution of the deeds." *Baldwin v. Birchby*, Wyo., 346 P.2d 278, 280–281 (1959). See, also, *Zullig v. Zullig*, Wyo., 502 P.2d 198, 201–202 (1972).

Two Wyoming cases state without detailed discussion that the burden of proof of undue influence is upon the will contestant. *Wood v. Wood*, 25 Wyo. 26, 164 P. 844 (1917); and *In re Merrill's Estate*, 80 Wyo. 276, 341 P.2d 506, 509 (1959).

the burden of proof [4] in an undue-influence contest, but merely to establish that once certain circumstances are established the contestant is no longer saddled with a "clear proof" standard on the remaining issues.

■ Family relationships by themselves are not presumed to be confidential relationships. *Zullig v. Zullig*, Wyo., 502 P.2d 198, 202 (1972). But in this case, Sandra Brug's uncontradicted active involvement in the procurement of the deed, and as a go-between Matheny and the two attorneys, the uncontradicted evidence of Matheny's weakened condition, and the uncontradicted fact that she had been granted power of attorney by Matheny, clearly establish a confidential relationship.

In a contemporary will contest, the court said, in *In re Draper's Estate*, Wyo., 374 P.2d 425, 430–431 (1962):

". . . [B]efore the proponent of the will has any obligation to present evidence showing that undue influence did not exist there must be evidence, the probative force of which establishes that (1) the relations between the one charged with exercising undue influence and the decedent afforded an opportunity to control the testamentary act, (2) the decedent's condition was such as to permit subversion of his freedom of will, (3) there was activity on the part of the person charged with exercising undue influence; and (4) that such person unduly profited as beneficiary under the will."

Sandra Brug's testimony shows that she was gathering legal advice for the bed-ridden Matheny. We have previously discussed our reservations about the legal advice Brug said she relayed to Matheny. Brug's own testimony shows that Matheny appeared to rely on that advice in deeding her the ranch. Matheny's trust in Brug is evidenced by the fact that she had power of attorney to act for him. We think that undisputed testimony established that Brug was afforded an opportunity to control Matheny's grant of the deed to her.

With respect to Matheny's condition, it is undisputed that he was heavily drugged. It is also clear that his physical condition was such as to hinder or prevent him from independently seeking advice from attorneys.

Sandra Brug's activity in procuring the deed has already been detailed. With respect to the requirement of unduly profiting, the record is clear that the deed purported to give Brug the entire ranch, which only five days earlier had been willed in equal shares to her and the two children. The record also shows that Brug apparently failed to protest the division of the ranch in the will when Matheny assembled the three beneficiaries to ask them if they were satisfied with the will.

We are, thus, satisfied that the record contains clear proof of suspicious circumstances—supported by uncontradicted testimony.

Although the trial judge did not explicitly reach this conclusion, this defect is not fatal to the judgment in view of the uncontradicted evidence in the record supporting such a finding. We have previously held that

". . . [i]n the absence of special findings of fact, this reviewing court must consider that the trial court's judgment carries with it every finding of fact supported by the evidence. . . ." *P & M Cattle Co. v. Holler*, Wyo., 559 P.2d 1019, 1024 (1977).

In the case before us, the trial judge did not make special findings of fact in his Judgment and Decree. See, Rule 52(a), Wyoming Rules of Civil Procedure.

■ We are satisfied from our reading of the following cases that once there is clear proof of suspicious circumstances, defined above, a simple preponderance of the evidence will support a finding of undue influence: *In re Draper's Estate*, supra, at 374 P.2d 431; *In re Conroy's Estate*, supra, at 211 P. 99; *Baldwin v. Birchby*, supra, at 346 P.2d 280; and *Zullig v. Zullig*, supra, at 502 P.2d 201–202.

---

4. See, fn. 3, supra.

In finding undue influence by a preponderance of the evidence, the judge found Sandra Brug's testimony to be characterized as "indulged with hyperbole and some prevarication, and subject therefore to the rule that it might be disregarded except as corroborated by other reliable evidence." We hold that there was sufficient evidence in the record to support a finding by inference—if not directly—that William E. Matheny executed the deed to Sandra Brug as a result of undue influence.

Affirmed.