**Marie B. MAY, Appellant (Petitioner),**

v.

**The ESTATE OF Roy McCORMICK, By and Through Laurence SWALLOW, Administrator, Appellee (Respondent).**

No. 88–319.

Supreme Court of Wyoming.

Feb. 27, 1989.

Steven M. Avery, Riverton, and John R. Vincent of Hettinger, Leedy & Vincent, Riverton, for appellant.

Rex E. Johnson of Sherard, Sherard & Johnson, Wheatland, for appellee.

Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and ROONEY, Retired J.

ROONEY, Retired Justice.

Roy McCormick (hereinafter referred to as "McCormick") died May 6, 1988. An administrator of his estate was appointed upon the allegation that he died intestate. Then, appellant filed a petition to admit to probate a will of McCormick dated October

26, 1982. This appeal is from an order denying such petition.

We affirm.

Appellant, a stepdaughter of McCormick, was sole beneficiary under the October 26, 1982 will. On January 20, 1983, McCormick executed a new will under which Gary Peterson, his nephew, was sole beneficiary. It provided in part that "all other former wills and codicils to wills heretofore made by me" were revoked. In March 1983, McCormick destroyed the January 20, 1983 will.[1]

■ Appellant argued that the October 26, 1982 will was revived through destruction of the January 20, 1983 will. The law relative thereto was set forth by this court in *In re Wilson's Estate*, 397 P.2d 805, 809 (Wyo.1964), reh. denied 399 P.2d 1008 (Wyo.1965):

> "[C]ourts have accepted the theory that, in the absence of statutes, the subsequent destruction of a revoking will does not have the effect of reviving the former will unless there is evidence that it was the intention of the testator to revive the former will. The principle was accepted that the question of revival is one of pure intention without there being any *presumption* either for or against revival arising by virtue of the destruction of the revocatory will."

Since there is no evidence in the record indicating any intention on the part of McCormick to revive a former will, this matter should be concluded with the determination that McCormick died intestate.

■ Appellant argues that McCormick lacked testamentary capacity[2] to make the January 20, 1983 will which revoked the October 26, 1982 will. Of course, this argument is in contradiction to appellant's argument that the destruction of the January 20, 1983 will revived the October 26, 1982 will. If the January 20, 1983 will was invalid, it was ineffective from its inception, and its destruction could not have any legal effect. In any event, there was no evidence directed specifically to McCormick's lack of testamentary capacity on January 20, 1983. There was testimony by the scrivener of the October 26, 1982 will and by the witnesses to it, that McCormick was specifically interrogated with reference to each of the elements necessary for testamentary capacity, and his responses indicated that he had such.

The district court noted that there was only a few months between October 26, 1982 (the date of the will offered by appellant for probate and the date upon which she therefor acknowledged testamentary capacity) and January 20, 1983 (the date at which she challenged the existence of such capacity). There was no evidence of a change in McCormick's testamentary capacity between the two dates.

■ On February 16, 1983, McCormick did execute a voluntary petition for appointment of a guardian of his person and estate. It was filed March 30, 1983, and an

---

1. McCormick had made two wills prior to the October 26, 1982 will. On February 22, 1982, he executed a will under which appellant was sole beneficiary. In March 1982, he executed a will in which appellant shared in the estate. He also executed a deed on October 26, 1982, conveying real estate to himself and appellant as joint tenants. A contest over the deed was before this court on appeal of a summary judgment. We reversed and remanded the case for trial. *May v. McCormick, by and through Swallow*, 704 P.2d 709 (Wyo.1985). The parties then settled the matter by agreeing to a division of the property.

2. Quoting from 1 Page on Wills, § 12.21, pp. 606–08 (1960), this court set forth the elements of testamentary capacity in *In Re Estate of Morton*, 428 P.2d 725, 729 (Wyo.1967):

"'Testator must have sufficient strength and clearness of mind and memory, to know, in general, without prompting, the nature and extent of the property of which he is about to dispose, and nature of the act which he is about to perform, and the names and identity of the persons who are or are to be the objects of his bounty, and his relation towards them. He must have sufficient mind and memory to understand all of these facts, and to comprehend these elements in their relation to each other, and a charge, in negative form, that capacity is lacking if testator is not able to know all of these facts, is erroneous, since he lacks capacity if he is unable to understand any one of them. He must be able to appreciate the relations of these factors to one another, and to recollect the decision which he has formed.'"

order appointing a guardian was entered on April 25, 1983.

On June 8, 1983, the October 26, 1982 will was brought to McCormick, and he physically destroyed it. Appellant argues that McCormick then lacked testamentary capacity necessary to destroy the will.[3] Since the will had already been revoked, the later destruction or non-destruction of it would have no effect upon its validity. In any event, the testimony of the witnesses to the destruction was to the effect that McCormick was specifically interrogated with reference to each of the elements necessary to determine testamentary capacity, and his responses indicated the existence of such capacity. Thus, there was evidence upon which the trial court could base its determination that McCormick had sufficient testamentary capacity to destroy the will on June 8, 1983.[4] We have often said that, on appeal, we assume the truth of the evidence in favor of the successful party, ignore that of the unsuccessful party in conflict therewith, and give that of the successful party every favorable inference which may be reasonably drawn therefrom. E.g. *Goggins v. Harwood,* 704 P.2d 1282, 1284 (Wyo.1985); *Stockton v. Sowerwine,* 690 P.2d 1202, 1205 (Wyo.1984); *In re Merrill's Estate,* 341 P.2d at 508; and cases cited therein.

AFFIRMED.

---

**3.** With reference to the effect of a guardianship on testamentary capacity, this court said in *In Re Merrill's Estate,* 80 Wyo. 276, 341 P.2d 506, 510 (1959):

> "Although the record of a guardianship has been held to be competent evidence in a proceeding to determine the validity of a will, a showing of the appointment of a guardian does not make out a prima facie case of incompetency, raises no presumptions of insanity, and has often been held to be entitled to little or no weight. See 2 Page on Wills, 3 ed., § 805; Thompson on Wills, 3 ed., § 70; and generally see 94 C.J.S. Wills §§ 46, 64; 57 Am.Jur. Wills §§ 110, 135.
>
> "'* * * An order having a guardian appointed would not necessarily be inconsistent with testamentary capacity because guardianship may only indicate an inability to manage property or business affairs. * * *' 36 Tex. L.Rev. 18.

"Most of the cases to which reference is made in these authorities are limited in the assistance they provide since they relate to cases dealing with wards who admittedly have had mental difficulties, sometimes having been found to be insane. Even in such cases, courts have been very careful to say that the adjudication in a guardianship or insanity matter is not one which can be carried over into the finding as to the validity of a will."

The guardianship order in this case recited in part that the court "does find that Roy McCormick is incompetent and unable, unassisted, to properly manage and care for his property *as a result of infirmities and physical disability.*" (Emphasis added.) And see *Matter of Estate of Roosa,* 753 P.2d 1028 (Wyo.1988).

**4.** Appellant's expert witness testified that in his opinion McCormick did not have testamentary capacity on June 8, 1983.