**The ESTATE OF Charles Louis SHORT.**

**Owen SHORT, personal representative, Appellant (Plaintiff),**

v.

**Walter Earl HALL and Virginia May Hall, Appellees (Defendants).**

**No. 89–121.**

Supreme Court of Wyoming.

Jan. 26, 1990.

Fred W. Phifer, Wheatland, for appellant.

Frank J. Jones, Wheatland, for appellees.

Before CARDINE, C.J., and
THOMAS, URBIGKIT, MACY and
GOLDEN, JJ.

MACY, Justice.

Appellant Owen Short, the personal representative of the estate of Charles Louis Short (the decedent), appeals from a partial summary judgment dismissing his complaint insofar as it pertained to the canceling of a deed transferring the decedent's farm to Appellees Walter Earl Hall and Virginia May Hall due to the alleged exercise of undue influence over the decedent. From a bench trial, Short appeals the district court's decision to exclude statements made by the decedent and the court's award to the estate for money the decedent gave or loaned to the Halls.

We affirm.

Short raises the following issues:

1. The Court erred in granting the Appellees['] Motion for Summary Judgment with regard to the transfer of Charles Short's farm to the Appellees based upon a finding that there were no genuine issues of fact regarding undue influence.

2. The Court erred in finding that Thirty–Five Hundred Dollars ($3,500.00) of the Six Thousand Dollar[s] ($6,000.00) represented by Check # 4366 was given to Appellees as payment for a joint enterprise in building a garage that was attached to the Appellees' house.

3. The Court erred in not granting the Appellant Judgment for the following money received by Appellees from Charles Short:

a. One Thousand Dollars ($1,000.00) evidenced by Check # 4310

b. One Thousand Seven Dollars and Ninety–Nine Cents ($1,007.99) evidenced by Check # 4472

4. The Court erred in ordering that any testimony of *Plaintiff's* concerning any statement of decedent, which ultimately turned out to be uncorroborated, was to be disregarded as if said testimony had never been given.

The materials presented in favor of and in opposition to the motion for summary judgment reveal that, in 1986, the decedent owned and lived on a farm near Wheatland, Wyoming. He was approximately sixty-nine years old and had been a widower since 1985. On December 5, 1986, the decedent was hospitalized with acute abdominal pain and had surgery. After his release from the hospital on December 15, 1986, the decedent went to live with the Halls, despite the fact that he had family members living in the Wheatland area. The record does not clearly indicate the reasons for the decedent's decision to live with the Halls, but it does show that the decedent and the Halls had been friends for several years. The record also reveals that the decedent mistakenly believed that Mrs. Hall was a nurse.

On December 24, 1986, the decedent executed a warranty deed conveying his farm

to the Halls for one dollar and "other good and valuable considerations," and the Halls recorded the deed. According to Mr. Hall, while the decedent was in the hospital, the decedent told him that he was going to transfer the farm to the Halls. Mr. Hall was the only person present when the decedent made that statement.

In February 1987, the decedent had another surgery and subsequently learned that he had cancer. He continued to live with the Halls until March 1987, when he moved back to the farm. The Halls moved their trailer to the farm to live near the decedent. The decedent died of cancer on October 30, 1987.

On November 19, 1987, Short filed a complaint, alleging that the Halls fraudulently induced the decedent to convey his farm to them for no valuable consideration. Short also alleged that the decedent was not mentally competent to voluntarily convey his property and that the Halls had used fraud and undue influence to strip the decedent of all his money and personal property. Short sought cancellation of the deed conveying the farm to the Halls, an accounting and judgment for all the personal property and money taken from the decedent, a judgment for the amount of the Halls' outstanding mortgages on the farm, and $50,000 in punitive damages for the Halls' willful and malicious conduct.

The Halls filed an answer, generally denying Short's allegations, and, after extensive discovery and one continuance, moved for a summary judgment on January 19, 1989. On March 22, 1989, the district court issued an order, on the basis of a concession by Short, stating that Short did not have the right to object to the competency of the decedent or to the execution of the warranty deed in question. On April 5, 1989, the district court granted a partial summary judgment in favor of the Halls on all issues pertaining to the decedent's transfer of his farm to the Halls. In its decision letter, the court stated that Short had failed to present any facts indicating that the Halls had exercised undue influence over the decedent by destroying his free agency. The district court also decided that the Halls were not entitled to a summary judgment on the issues relating to money and personal property which they had allegedly received from the decedent. The court held that the resolution of those issues involved factual questions, and, therefore, Short was entitled to a trial.

The evidence produced at the trial held on April 13, 1989, with conflicts properly resolved in favor of the Halls, revealed the following facts. On June 22, 1986, the decedent wrote a check payable to Mr. Hall for $10,000. The decedent and Mr. Hall agreed that the amount was a loan with an annual interest rate of eight percent. Mr. Hall made nine payments on the loan in the amount of $200 each. At the trial, Mr. Hall testified that he discontinued making payments because the decedent told him to forget about paying off the loan. Mr. Hall was unable to provide any other evidence supporting the contention that the decedent forgave the loan.

After the decedent and the Halls moved to the farm in 1987, the decedent wrote a $1,000 check payable to Mr. Hall. The Halls claimed that the money was for one-half of the cost of a television satellite dish which was to be utilized by both the decedent and the Halls. Approximately four and one-half months after the decedent wrote the check, the Halls purchased a satellite dish for $1,937.43. Mr. Hall testified that he originally used the $1,000 for another purpose but eventually completed the deal with the decedent and purchased the satellite dish. The decedent also wrote a check payable to Mr. Hall for $6,000, which the Halls claimed was a gift. Mr. Hall's testimony concerning the intended use of this money was inconsistent. At one point, he stated that the money was to be used for moving expenses and for the construction of a garage on the farm. He later testified that he actually used $2,500 of the $6,000 to modify his airplane.

In October 1987, just before he died, the decedent gave Mr. Hall another check in the amount of $1,007.99. Mr. Hall testified that the decedent wrote that check to pay for the property taxes due on the property which he had given to the Halls. Mr. Hall

subsequently wrote a check payable to the Platte County Treasurer in the amount of $1,007.99. In addition, the decedent left Mr. Hall several signed blank checks and instructed him to use the rest of the money in the decedent's checking account to pay for the decedent's funeral expenses. Mr. Hall filled out one of the blank checks for $4,200 and paid three of the decedent's bills. Mr. Hall did not pay for the decedent's funeral, but he did offer to return the remainder of the $4,200 to the estate.

On May 4, 1989, the district court rendered a judgment in favor of Short for $16,909.95. The court first ordered that the Halls pay Short the unused portion of the $4,200 which the decedent had left for payment of his funeral expenses. That amount equaled $4,065.62. Second, the court found that the $10,000 check from the decedent to Mr. Hall was a loan which was not forgiven by the decedent. The court awarded $10,149.98 to Short—the unpaid balance plus eight percent interest.[1] Third, the district court decided that the Halls owed $2,500 to Short for the portion of the decedent's $6,000 they used to modify their airplane. The court stated in its decision letter that the decedent authorized the Halls to use the money on the construction of a garage but not on airplane modification. Fourth, the district court awarded $194.35 to Short for a refund the gas company made to the decedent. Finally, the court ordered that Short's testimony "concerning any statement of decedent, which ultimately turned out to be uncorroborated, must be disregarded pursuant to the provisions of Wyoming Statute 1–12–102 as if said testimony had never been given." Short appealed from that judgment and from the partial summary judgment in favor of the Halls.

■ Summary judgment is proper if the moving party establishes that no genuine issue of material fact exists and that the court should grant summary judgment as a matter of law. If the movant meets that burden, the party opposing the motion has the burden to present specific facts showing that a genuine issue of material fact does exist. *Nelson v. Crimson Enterprises, Inc.*, 777 P.2d 73 (Wyo.1989); *Jones Land and Livestock Co. v. Federal Land Bank of Omaha*, 733 P.2d 258 (Wyo.1987).

### Undue Influence

■ Short asserts that the district court erred by granting a summary judgment in favor of the Halls on the issue of undue influence. This Court recently stated that the three elements of undue influence are: "(1) opportunity to control; (2) a condition permitting subversion; and (3) activity on the part of the person charged." *Macaraeg v. Wilson*, 749 P.2d 272, 277 (Wyo. 1988). We have also held that courts should zealously scrutinize deed transactions between people in confidential relationships. If the party challenging the validity of a deed transaction on the basis of undue influence establishes a confidential relationship, the party who received the property has the burden to establish that the transaction was fair and conducted in good faith. *Perry v. Vaught*, 624 P.2d 776 (Wyo.1981).[2]

■ Short has failed to present evidence sufficient to meet his burden in opposing the motion for summary judgment. The depositions of the decedent's family members exemplify Short's lack of sufficient evidence. Counsel for the Halls deposed the decedent's nephew, sister-in-law, and two brothers (one of which was Owen Short). All four deponents lived in the Wheatland area and claimed to know the decedent very well. When asked what they knew about the decedent conveying his farm to the Halls, all four deponents indicated they had no knowledge of the

---

1. The trial court calculated the amount of interest owed for a period ending on April 30, 1989.

2. While the analysis for undue influence is different for the transfer of property by deed than it is for the transfer of property by will, *Bergren v. Berggren*, 77 Wyo. 438, 317 P.2d 1101, 1107

(1957) (quoting 38 C.J.S., *Gifts* § 34 (1943)), this Court has examined the same or similar elements of undue influence in both situations. *Brug v. Case*, 600 P.2d 710 (Wyo.1979). *See O'Donnell v. Western National Bank of Casper*, 705 P.2d 1242 (Wyo.1985).

Halls exerting undue influence upon the decedent.

Short also contends that a confidential relationship existed between the decedent and the Halls and that, therefore, the Halls have the burden to establish the fairness of the transaction. We disagree. In *Brug v. Case*, 600 P.2d 710 (Wyo.1979), we held that a confidential relationship existed between two parties in a deed transaction because of the grantee's active involvement in the procurement of the deed, the grantee's actions as a liaison between the grantor and the grantor's lawyer, the grantor's weakened physical and mental conditions, and the fact that the grantor gave the grantee a power of attorney.[3] In *Perry*, 624 P.2d 776, we held that a confidential relationship existed because the grantor was totally dependent upon the grantee, the grantee helped procure the deed, and the grantor was somewhat senile and had no family in the area where he lived. Both relationships involved the reposal of confidence by the grantors and the exercise of control and dominance by the grantees.

In this case, Short failed to present any evidence indicating that the Halls controlled or even influenced the decedent's decisions concerning his financial affairs at the time when he conveyed the farm. To the contrary, the decedent's nephew and brother stated in their depositions that the decedent took care of his own financial affairs until just before he died. Thus, we hold that, with regard to the issue of undue influence, no genuine issue of material fact exists, and the Halls are entitled to a judgment as a matter of law.

### Sufficiency of the Evidence

Short contends that the district court erred when it found that the decedent's $6,000 payment to the Halls was his contribution to the joint enterprise of building a garage. Despite the fact that the district court awarded $2,500 to Short because the Halls used that amount for their own pur-poses, Short claims that he is entitled to the remaining $3,500.

■ Short's argument challenges the sufficiency of the evidence supporting the district court's decision. We will review the evidence presented to the district court according to the following standard:

In reviewing the sufficiency of the evidence to support findings of fact by the trial court, this court will examine only the evidence favorable to the prevailing party and give to it every favorable inference. When examined under this standard, if there is substantial evidence to support the factual findings by the trial court, its order will not be disturbed.

*State ex rel. Worker's Compensation Division v. Lewis*, 739 P.2d 1225, 1226 (Wyo. 1987) (citations omitted), *quoted in Bagshaw v. Circle H Oilfield Service*, 753 P.2d 1044, 1045 (Wyo.1988).

■ Substantial evidence exists to support the district court's findings that the decedent paid $6,000 to the Halls for their moving expenses and for his contribution to a joint enterprise and that the Halls used $3,500 of that $6,000 for those purposes. Mr. Hall testified that the decedent gave the Halls $6,000 for moving expenses and for the construction of a two-car garage. He also stated that they used less than $500 for their move to the farm and that he used $2,500 to modify his airplane. In addition, Benny Ryff, a friend of the decedent's who helped build the garage, testified that the decedent was actively involved in designing and supervising the construction of the garage. In light of the fact that Short did not present any evidence to the contrary, the district court could have reasonably found that $3,500 of the $6,000 which the decedent gave to the Halls was for his contribution to a joint enterprise and for the Halls' moving expenses.

Short also challenges the district court's decision not to award him the $1,000 which, as the Halls testified, was the decedent's payment for one-half of the cost of a television satellite dish and the $1,007.99

---

**3.** We note that *Brug*, 600 P.2d 710, involved a deed transaction between spouses. The existence of a family relationship, however, does not necessarily establish the existence of a confidential relationship. *Id; Zullig v. Zullig*, 502 P.2d 198 (Wyo.1972).

which, as Mr. Hall testified, was the decedent's payment of property taxes on the farm. The district court's decision not to allow Short's recovery of those amounts is supported by substantial evidence. The Halls presented testimony and cancelled checks supporting their claim that the decedent voluntarily expended $1,007.99 for property taxes and $1,000 for a satellite dish.

### Wyo.Stat. § 1–12–102 (1977)

 In its decision letter, the district court stated that, pursuant to Wyo.Stat. § 1–12–102 (1977), the court must disregard any uncorroborated testimony by Short concerning a statement made by the decedent. Short asserts, and the Halls concede, that the district court misconstrued § 1–12–102. Short also contends that the court's error was plain error.

Section 1–12–102 provides:

In an action or suit by or against a person who from any cause is incapable of testifying, or by or against a trustee, executor, administrator, heir or other representative of the person incapable of testifying, no judgment or decree founded on uncorroborated testimony shall be rendered in favor of a party whose interests are adverse to the person incapable of testifying or his trustee, executor, administrator, heir or other representative. In any such action or suit, if the adverse party testifies, all entries, memorandum and declarations by the party incapable of testifying made while he was capable, relevant to the matter in issue, may be received in evidence.

We agree with the parties that the district court erroneously concluded that Short's uncorroborated testimony should be disregarded. *See Consolidated Construction, Inc. v. Smith,* 634 P.2d 902 (Wyo. 1981) (discussing the application of § 1–12–102). Section 1–12–102 does not specify the source of the uncorroborated testimony which is insufficient to sustain a judgment against a person incapable of testifying or that person's representative. It simply states that such a judgment cannot be founded upon uncorroborated testimony.

We hold, however, that Short failed to show that the district court's interpretation of § 1–12–102 prejudiced his substantial rights. Absent a showing of prejudice to substantial rights, we will not reverse. *Weisbrod v. Ely,* 767 P.2d 171 (Wyo.1989); *Anderson v. Bauer,* 681 P.2d 1316 (Wyo. 1984).

Affirmed.